# SCHUBEL v. OLCOTT.

[120 Pac. 375.]

CONSTITUTIONAL LAW—SELF-EXECUTING PROVISIONS.

1. Article IV, Section 1a of the Constitution of Oregon, and Article IX, Section 1a, reserving the initiative and referendum to the legal voters of every municipality as to local regulations, and empowering counties to regulate taxation and exemptions, subject to any general law, are not self-executing as to counties attempting to regulate taxation and exemptions through the initiative.

COUNTIES—LOCAL LEGISLATION—INITIATIVE—STATUTORY MACHINERY.

2. Section 3470, et seq., L. O. L., providing means for carrying into effect the initiative and referendum provisions of the constitution, provide machinery for carrying into effect Article IX, Section 1a, empowering counties to regulate taxation and exemptions within their limits, subsequently adopted.

COUNTIES—NATURE AND STATUS—"MUNICIPAL CORPORATION."

3. A county is a municipal or quasi municipal corporation invested with legislative powers to be exercised for local purposes, subject to the control of the State, but is not, in a strict sense, a "municipal corporation."

CONSTITUTIONAL LAW—CONSTRUCTION—INTENT.

4. The court, in construing the constitution, must give effect to the intent of the people in adopting it, as found in the instrument tiself, and it will be presumed that the language thereof has been employed with sufficient precision to convey such intent; and where such presumption prevails nothing remains except to enforce such intent.

CONSTITUTIONAL LAW—CONSTRUCTION—INTENT.

5. The court, in ascertaining the intent of the people in adopting the constitution, must resort to the natural signification of the words used, in the order of grammatical arrangement; and where, thus regarded, the words embody a definite meaning, involving no absurdity and no contradiction between different parts of the constitution, the meaning apparent. on its face must be adopted.

CONSTITUTIONAL LAW—CONSTRUCTION.

6. A constitution which provides for the future, as well as the present, must be interpreted so as to carry out the principles of government; and the application of arbitrary rules of construction will be resorted to with hesitation.

STATUTES—"LOCAL" OR "SPECIAL" LAWS.

7. The words "local" and "special" in Article IV, Section 1a, of the constitution, reserving the initiative and referendum powers to the voters of every municipality as to all local, special, and municipal legislation, are synonymous, and mean enactments intended to affect only certain persons, or to operate in specified localities; and an act 's "local" when the sub-

ject relates to a portion only of the people 'or their property, or when it operates only within a single city, county, or other particular division.

COUNTIES — POWERS — INITIATIVE — "DISTRICT"—"MUNICIPAL CORPORA-
   TION."

· 8. A county is within Article IV, Section 1*a*, of the constitution, reserving the initiative and referendum powers to the voters of every municipality and district, and the people of the several counties are authorized, by Article IX, Section 1*a*, to regulate taxation and exemptions within their several counties, as provided by Article IV, Section 1*a*, in a manner subservient to any general law which may be enacted, though the word "district," as used in Article IV, Section 1*a*, has a broader signification than "county," and may designate a territory comprising more than a county, or containing less area.

STATUTES—SPECIAL OR LOCAL LAWS—MODIFICATIONS OF CONSTITUTIONAL
   PROVISIONS.

9. Article IX, Section 1*a*, of the constitution, authorizing the people of the several counties to regulate taxation and exemptions within their limits, subject to any general law, adopted in 1910, modifies Article IV, Section 23, subdivision 10, prohibiting special or local laws for the assessment and collection of taxes.

STATUTES—SPECIAL OR LOCAL LAWS—CONSTITUTIONAL PROHIBITION.

10. Article IV, Section 23, subdivision 10, of the Constitution, prohibiting local or special laws for the assessment and collection of taxes, prohibits local or special laws by the legislature.

MANDAMUS—COMPELLING SECRETARY OF STATE TO FILE INITIATIVE PETI-
   TION FOR A LOCAL LAW—QUESTIONS REVIEWABLE.

11. Where, in mandamus to compel the Secretary of State to file an initiative petition for a local law for a county, the proposed law is not in the record, the court will not determine whether or not it is a local law, but will issue a peremptory writ.

Original proceeding in Supreme Court.

Original mandamus proceeding in Supreme Court by G. A. Schubel against Ben W. Olcott, Secretary of State, to require him as such officer to file an initiative petition for a local option law for Clackamas County.

GRANTED.

For plaintiff there was a brief over the names of *Messrs. Williams, Wood & Linthicum, Mr. W. S. U'Ren, Mr. Edward S. J. McAllister* and *Mr. Erskine Wood,* with oral arguments by *Mr. Charles E. S. Wood, Mr. U'Ren* and *Mr. McAllister.*

For defendant there was a brief over the names of
*Mr. Andrew M. Crawford,* Attorney General, *Mr. Fred-
erick W. Mulkey, Mr. Isaac H. Van Winkle,* Assistant
Attorney General, and *Mr. James W. Crawford,* Assistant
Attorney General, with oral arguments by *Mr. Andrew
M. Crawford* and *Mr. Mulkey.*

MR. JUSTICE BEAN delivered the opinion of the court.

MR. JUSTICE BURNETT dissenting.

MR. JUSTICE MCBRIDE dissenting in part.

This is a proceeding in mandamus, instituted in this
court under the provisions of Article VII, section 2, of
the Constitution of Oregon, adopted November 8, 1910,
for the purpose of requiring the defendant, as Secretary
of State, to file an initiative petition for a local law for
the county of Clackamas to exempt from taxation all
trades, labor, professions, business, occupations, personal
property, and improvements on, in, and under land, and
to require that all taxes levied and collected within said
Clackamas County shall be levied on and collected from
the assessed values of land and other resources, separate
from the improvements thereon, and on and from the
assessed value of public service corporation franchises
and rights of way.

The following facts are alleged: That said petition
was prepared and circulated in compliance with an act
of the legislature of 1907, entitled "An Act to provide for
carrying into effect the initiative and referendum powers
reserved by, the people in Section 1 and Section 1a of
Article IV of the Constitution of the State of Oregon on
general, local, special, and municipal legislation; to regu-
late elections thereunder. * * " Laws 1907, c. 226. That
the petition was signed by 674 legally qualified voters of
the county of Clackamas, more than the percentage
required for that purpose. That the same was presented
to defendant for filing, who, awaiting the opinion of the

Attorney General relative to filing, receipted therefor, and thereafter refused to file such petition. That defendant, as Secretary of State, is the legal custodian of all such petitions as the one offered by plaintiff for filing, and is the official with whom the law provides that all initiative and referendum petitions appertaining to the State as a whole, or a district thereof, shall be filed. That, by virtue of said legislative act, plaintiff is entitled to have the petition filed according to the terms thereof. To the alternative writ of mandamus, defendant answered, in effect, that under the laws said petition should not be filed.

It is contended by the Attorney General and counsel for defendant that Article IX, Section 1*a,* of the Constitution of Oregon, is not self-executing; that counties are not municipalities, within the meaning of Article IV, Section 1*a,* of the constitution; and that the procedure indicated by Section 3470 *et seq.,* L. O. L., does not apply to them.

The theory of plaintiff is that Article IV, Section 1*a,* confers upon counties the power to initiate county legislation; that the act of 1907 provides the machinery by which such right may be exercised; that Article IX, Section 1*a,* gives to counties the power to regulate taxation within their boundaries.

1. In order to consider the questions presented, we will refer to the portions of the amendments of the organic law of this State applicable thereto. The first, adopted by the people June 2, 1902, being Article IV, Section 1, relating to legislative authority, style of bill, initiative and referendum, makes, among others, the following provisions:

"The legislative authority of the State shall be vested in a legislative assembly, consisting of a Senate and House of Representatives, but the people reserve to themselves power to propose laws and amendments to the constitution and to enact or reject the same at the polls, inde-

pendent of the legislative assembly, and also reserve power at their own option to approve or reject at the polls any act of the legislative assembly. The first power reserved by the people is the initiative, and not more than eight per cent of the legal voters shall be required to propose any measure by such petition, and every such petition shall include the full text of the measure so proposed. Initiative petitions shall be filed with the Secretary of State not less than four months before the election at which they are to be voted upon. The second power is the referendum. * * Petitions and orders for the initiative and for the referendum shall be filed with Secretary of State, and in sumitting the same to the people he, and all other officers, shall be guided by the general laws and the act submitting this amendment, until legislation shall be especially provided therefor."

Article IV, Section 1a, adopted June 4, 1906, relating to the initiative and referendum on local, special, and municipal laws, and parts of laws, is as follows:

"* * The initiative and referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special, and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation. Not more than ten per cent of the legal voters may be required to order the referendum nor more than fifteen per cent to propose any measure by the initiative, in any city or town."

Article IX, Section 1a, proposed by initiative petition and adopted by a majority of votes at the election November 8, 1910, provides as follows:

"No poll or head tax shall be levied or collected in Oregon. No bill regulating taxation or exemption throughout the State shall become a law until approved by the people of the State at a regular general election. None of the restrictions of the constitution shall apply to measures

approved by the people declaring what shall be subject to
taxation or exemption and how it shall be taxed or
exempted whether proposed by the legislative assembly or
by initiative petition; but the people of the several counties
are hereby empowered and authorized to regulate taxa-
tion and exemptions within their several counties, subject
to any general law which may be hereafter enacted."

Article IV, Section 1*a,* and Article IX, Section 1*a,* of
the constitution, are not self-executing in respect to coun-
ties, as they make no provisions regarding the manner of
their enforcement. By the first of these, the initiative and
referendum powers reserved by the people are further
reserved to the legal voters of every municipality and dis-
trict as to all local, special and municipal legislation of
every character in their respective municipalities and dis-
tricts. By the second, the people of the several counties are
empowered and authorized to regulate taxation and exemp-
tions within their several counties, subject to any general
law which may be hereafter enacted. In Article IV, Section
1*a,* it is specifically provided that the manner of exercising
such powers shall be prescribed by general laws, except
as to cities and towns; neither section containing rules
by means of which this right may be given the force of
law as regards local legislation in counties. Cooley's
Constitutional Limitations (7 ed.) 121; *Long* v. *City of
Portland,* 53 Or. 92, 96 (98 Pac. 149, 1111); *Reeves* v.
*Anson,* 13 Wash. 17 (42 Pac. 625); *Stevens* v. *Benson,*
50 Or. 269 (91 Pac. 577). Hence we must look at the
general laws of this State for the manner of executing
these sections of the organic law.

2. Turning to the legislative enactment of 1907, being
Section 3470 *et seq.,* L. O. L., it appears that the legisla-
ture intended to and did make all the necessary rules for
carrying into effect the initiative and referendum pro-
visions of the constitution. The following legislative
decrees affirm this in directing that, if the Secretary of

State shall refuse to accept and file any petition for the initiative or for the referendum, any citizen may apply, within ten days after such refusal for a writ of mandamus to compel him to do so (Section 3474, L. O. L.) ; that when a measure shall be filed with the Secretary of State, to be referred to the people of the State, or of any county or district composed of one or more counties, either by the legislative assembly or by the referendum petition, and when any measure shall be proposed by initiative petition, the Secretary of State shall forthwith transmit to the Attorney General of the State a copy thereof, and within ten days thereafter the Attorney General shall provide and return to the Secretary of State a ballot title for such measure.   Section 3475, L. O. L. An examination of Section 6 (Section 3476, L. O. L.) of the same act reveals that the reason of the legislative rule requiring the filing of an initiative petition with the Secretary of State, when only one county is interested in the measure, is to avoid confusion in the numbering of the initiative measures on the ballot.

It is urged that this act was passed prior to the amendment of the constitution contained in Article IX, Section 1*a,* and is not applicable thereto.   Though the machinery for carrying this amendment into effect was created before the birth of the amendment, yet such machinery or provisions of the enabling act fit with almost exact nicety, and we do not think it necessary for the people or the legislature to re-enact the provisions of this law.

In *Acme Dairy Co.* v. *Astoria,* 49 Or. 520, 523 (90 Pac. 153, 155), this court, speaking through Justice MOORE, in construing Article IV, Section 1*a,* said:

"The words 'municipality' and 'district,' as used in the clause of the amendment adverted to, are evidently expressions of equivalent import, for a district legally created from a designated part of the State and organized to

promote the convenience of the public at large is a municipal corporation."

3. A county is a municipal or *quasi* municipal corporation comprising the inhabitants within its boundaries, and formed for the purpose of exercising the powers and discharging the duties of local government and the administration of public affairs conferred upon it by law. Words and Phrases, vol. 2, 1656; 11 Cyc. 342. A county is not, in a strict sense, a municipal corporation. In a certain sense, it comes within the rules and principles of law applicable to such corporations. Words and Phrases, vol. 2, 1656. Judge DILLON, in his work on Municipal Corporations, vol. 1 (5 ed.), on page 25, says:

"In general, all of our American cities, towns, and counties are public corporations, full or *quasi*. They are created by the legislature, and are invested with power to decide and control local and subordinate matters pertaining to their respective localities."

In *Straw* v. *Harris,* 54 Or. 424, 437 (103 Pac. 777, 782), we find this language:

"Municipalities are but mere departmnets or agencies of the State, charged with the performance of duties for and on its behalf, and subject always to its control."

See, also, Words and Phrases, 4622. On page 434 of 54 Or. (103 Pac. 781), in the same opinion (*Straw* v. *Harris*), Mr. Justice KING, speaking for the court, says:

"To begin, let it be remembered that municipal corporations of the class under consideration do not come within those designated as counties, cities, or towns; and that it was intended that municipalities, other than those enumerated, might be created is obvious from the language used in Section 9 of the same article, namely: 'No county, city, town, or other municipal corporation,' etc. The clause other 'municipal corporation' clearly implies and indicates that the framers understood and recognized that there may be corporations, other than those enumerated,

of which we have school districts, irrigation districts, road districts, drainage districts, and ports. * *"

In *Simon* v. *Northup*, 27 Or. 487 (40 Pac. 560: 30 L. R. A. 171), a case construing the legislative enactment requiring Multnomah County to pay the bonds of the city of Portland, we quote from the brief of the learned counsel, at page 492 of 27 Or., as follows:

"The legislative assembly cannot transfer from one municipality (City of Portland) to another (Multnomah County) an indebtedness already resting on the former, and make it an obligation of the latter."

In *Cook* v. *Port of Portland,* 20 Or. 580, 585 (27 Pac. 263, 264: 13 L. R. A. 533), Mr. Justice BEAN quotes with approval from the case of *Curry* v. *Dist. Tp. of Sioux City,* 62 Iowa, 104 (17 N. W. 191), as follows:

"The word 'municipal,' as originally used in its strictness, applied to cities only; but the word now has a much more extended meaning, and when applied to corporations the words 'political,' 'municipal' and 'public' are used interchangeably."

A county is a public corporation, classed with cities, towns, and villages, and invested with subordinate legislative powers to be exercised for local purposes connected with the public good, and subject to the control of the State. 2 Kent, *275.

4, 5. In construing a written constitution, the object is to give effect to the intent of the people in adopting it. In the case of all written laws, it is the intent of the lawgiver that is to be enforced. But this intent is to be found in the instrument itself. It is to be presumed that language has been employed with sufficient precision to convey it, and, unless examination demonstrates that the presumption does not prevail in the particular case, nothing remains except to enforce it. The thing which we are to seek is the thought which it expresses. To ascertain this, the first resort in all cases is to the natural

signification of the words employed, in the order of grammatical arrangement in which the framers of the instrument have placed them. If, thus regarded, the words embody a definite meaning, involving no absurdity and no contradiction between different parts of the instrument, then that meaning apparent on its face is the only one we are at liberty to say was intended to be coveyed. In such case there is no room for construction. We have no right to add to or take away from that meaning. Endlich, Interpretation of Statutes, § 507; Cooley's Constitutional Limitations (7 ed.) p. 89.

6. It is undoubtedly true that a constitution is a law differing from statutes in its paramount force in cases of conflict, being supreme over all of them. Cooley's Constitutional Limitations, p. 78. A constitution which provides for the future, as well as the present, is to be interpreted so as to carry out the great principles of government; and to this end the application of arbitrary rules of construction is to be resorted to with hesitation and only with much circumspection. Endlish's Interpretation of Statutes, § 506.

7. As to what laws are local or special, we notice the following authorities: "An act is local when the subject relates to a portion only of the people or their property, and may not, either in its subject, operation, or immediate necessary results, affect the people of the State, or their property, in general." 36 Cyc. 987, note, citing Sedgwick St. & Const. Constr. (2 ed.) p. 589, note, quoted in *Earle* v. *San Francisco Bd. of Education,* 55 Cal. 489, 491; *State* v. *Pond,* 93 Mo. 606, 640 (6 S. W. 469).

"The term 'local,' as applied to statutes, is of modern origin, and is used to designate an act which operates only within a single city, county, or other particular division or place, and not throughout the entire legislative jurisdiction. In this sense, the term 'local' is the antithesis of 'general.'" 36 Cyc. 987, note, citing *State* v. *Sayre,* 142 Ala. 641 (39 South. 240).

See, also, *McGregor* v. *Baylies,* 19 Iowa, 43. The qualifying words "local" and "special," relating to municipal legislation, used in Article IV, Section 1*a,* are synonymous terms, and mean enactments intended to affect only certain persons, or to operate in specified localities only. *Acme Dairy Co.* v. *Astoria,* 49 Or. 520, 523 (90 Pac. 153, 155)..

The principle of local self-government is regarded as fundamental in American political institutions. It is not an American invention, but is traditional in England, and is justly regarded as one of the most valuable safeguards against tyranny and oppression. From Blackstone and the elementary writers we learn that the civil divisions of England—counties, towns, etc.—date back to the times of Alfred the Great. In no changes of policy, dynasty, peace or internal war, or even conquest, have these organizations been abandoned. They are in effect the same now as they were before the Norman invasion. Wherever the Anglo-Saxon have gone with their language and laws, these communities, each with a local administration, have gone with them. Here have been the seats of modern civilization, the nurseries of public spirit, and the centers of constitutional liberty. They are the opposites of those systems that collect all power at a common center. This right of self-government should be carefully guarded, and every infraction or evasion thereof condemned. This important principle finds its ideal counterpart in the New England town meeting, which is a legal assembly composed of the qualified voters of a town, and held for the election of all town officers and the discussion of all matters pertaining to the public business, property, and expenses of the town. Black's Constitutional Law (3 ed.) 504, 505.

In pursuance of this general principle, municipal corporations are established in all the states and invested

Sig. 17

with rights and powers of government subordinate to the
general authority of the state, but exclusive within their
sphere. The principle of local government being thus
firmly implanted in our political system, it rests with the
legislative authority of each state, which, in this State,
includes the legal voters by means of the initiative, to
apply and adjust this principle to the varying needs of
its own people. That sovereign authority must determine
what municipal corporations shall be created, and what
shall be their powers and the limit of their jurisdiction,
according to the requirements of the different sections and
districts of the State and their capacity and need of local
government. In some of the states, the right of local
government is guarded by constitutional provisions for-
bidding the legislature to make any private or special
laws "regulating the internal affairs of towns and
counties." In others, it is considered as one of the rights
inherent in the people at the time of the adoption of the
constitution and reserved to the people by that instrument,
except as modified by the grant of authority to the legisla-
ture. Black's Constitutional Law, § 185.

In this State we have a dual system of legislation. By
the provisions of our constitutional amendments, the right
to enact local, special, and municipal measures is reserved
to the legal voters of their municipalities and districts.
This authority is to be exercised in the respective localities
by means of the initiative process. Whatever have been
the duties or powers of counties prior to the adoption of
these amendments, we see no reason why such *quasi*
municipalities or districts cannot be endowed with legis-
lative functions by the plain provisions of the constitution.

8. For the origin of the provision for local self-govern-
ment by direct legislation, we must look to Article IV,
Section 1a, of the constitution, wherein the people of this
State declare as a fundamental law that "the initiative

and referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every municipality and district." And a county is clearly a municipality or district, within the meaning of this section: *Acme Dairy Co.* v. *Astoria,* 49 Or. 520, 523 (90 Pac. 153, 155) ; *Cook* v. *Port of Portland,* 20 Or. 584, 585 (27 Pac. 263, 264: 13 L. R. A. 533). The word "district," as used in this section has a broader or more elastic signification than "county," and may designate a territory comprising more than a county, or containing a less area. In defining the power conferred by Article IX, Section 1*a,* the framers used the word "county," which is more specific than "municipality" or "district," although the former is included in the latter. Briefly stated, the word "county" is, by the constitutional provision contained in Article IX, Section 1*a,* for the purpose therein expressed, practically incorporated into and made a part of Article IV, Section 1*a.*

9, 10. Counsel for defendant make the further contention that Article IX, Section 1*a,* conflicts with Article IV, Section 23, subdivision 10. This is tantamount to a claim that a constitution cannot be changed. It is apparent from a careful examination of both of these sections that Article IX, Section 1*a,* being the later, modifies the provisions of subdivision 10 to a certain extent by providing that "none of the restrictions of the constitution shall apply to measures approved by the people declaring what shall be subject to taxation or exemption and how it shall be taxed or exempted whether proposed by the legislative assembly or by initiative petition." This would appear to signify that, while we think the constitution is still paramount to the statute, there is now less difference than formerly between a constitutional provision and a statute enacted by the people pursuant to the initiative power. It should also be borne in mind that Section 23 of Article

IV is an inhibition upon the passage of local or special laws by the legislative assembly.

Carrying out the precepts contained in these portions of our constitution by giving them the meaning clearly indicated by the language used therein, and as generally understood by those for whom their provisions were intended, and proceeding in accordance with the legislative enactment, known as the "Enabling Act," we conclude that the initiative power, or power to propose and enact laws, reserved by the people in Article IV, Section 1, was further reserved by Article IV, Section 1*a,* to the legal voters of every municipality and district as to all local, special, and municipal legislation of every character in or for their respective municipality or district; and that the people of the several counties are authorized by Article IX, Section 1*a,* to regulate taxation and exemption, within their several counties, in the manner provided by Article IV, Section 1*a.* This is to be done in a manner subservient to any general law of the State which may be enacted, thus utilizing the power conferred upon counties as political subdivisions of the State.

11. The proposed measure is not contained in the record and we are not called upon to construe its provisions, or decide whether or not it is local. The relief prayed for should be granted, and the petition filed. It follows that the peremptory writ should issue, and it is so ordered.

PEREMPTORY WRIT ORDERED.

MR. JUSTICE MCBRIDE delivered the following concurring opinion.

I concur in the general line of reasoning pursued in the majority opinion, and in the result arrived at thereby. I do not think the propriety or even the constitutionality of the proposed measure is properly before us. I agree with Mr. Justice BURNETT in the conclusion that, if the proposed legislation infringes upon, or in any way hinders,

the State in the collection of its revenues, it is void to that extent. The right of the State to collect in full, and in its own way, the revenues necessary for its support is an attribute of its sovereignty, and cannot be taken away by local legislation. But, in my view of the case, the Secretary of State is not the proper officer to pass upon these questions, and, as I understand his position, he does not attempt to do so. His duties are purely ministerial, and when a measure, properly and honestly petitioned for and complying with the law of procedure and proof, is presented to him for filing, it is his duty to file it, leaving to the proper tribunals the question of its constitutionality after it shall have been adopted.

Suppose a bill should be presented to the legislature and ordered printed in its regular course. Would anybody seriously contend that the State Printer could say: "This bill is unconstitutional, and I therefore refuse to print it?" Surely not. I can see no difference in the two cases; the duty to file in the one case, and the duty to print in the other, seem to me to stand upon the same footing. The whole of the proposed bill is not before us judicially, and there may be possible doubts suggested as to its constitutionality, but these questions, as well as those as to its propriety, should be left, the first to the courts, and the second to the people, in their regular course.

MR. JUSTICE BURNETT delivered the following dissenting opinion.

Section 2 of Article VII of the constitution of the State, as amended by the initiative process at the general election of November, 1910, confers upon the Supreme Court the authority, in its own discretion, to take original jurisdiction in *mandamus, quo warranto,* and *habeas corpus* proceedings. Under the sanction of this rule, the plaintiff has presented his petition for, and the court has issued its alternative writ of, mandamus to the defendant,

as Secretary of State, to compel him to show cause why he should not be imperatively commanded to file an initiative petition "for a local law for the county of Clackamas to exempt from taxation all trades, labor, professions, business, occupations, personal property, and improvements on, in, and under land, and to require that all taxes levied and collected within said Clackamas County shall be levied on and collected from the assessed value of land and other natural resources, separate from the improvements thereon, and on and from the assessed value of public service corporation franchises and rights of way."

The questions involved have been presented to the court by a general demurrer to the writ. The form of the initiative petition mentioned is not given in the writ; neither is it set out according to its legal effect. All that appears on that point is the statement that the "petition so caused to be circulated by the plaintiff and others was prepared pursuant to and in compliance with the provisions of an act of the legislature" filed in the office of the Secretary of State February 25, 1907, the title of which is given in full. Section 3470, *et seq.*, L. O. L. There are no facts alleged from which the court can say whether the legal conclusion thus embodied in the writ is a correct one or not. This would probably make the writ amenable to the demurrer, but as the point was not mentioned at the argument it will not be considered as a reason for this opinion. The parties based their contentions solely on the construction to be given to certain sections of the constitution involved, and are entitled to have the case decided on the question thus presented. The plaintiff claims to be operating under Section 1*a* of Article IX, as enacted by the initiative process at the general election of November, 1910, and Section 1*a* of Article IV of the constitution, enacted by the same process at the general election of June, 1906, and contends that

the latter section and legislation in pursuance thereof, codified as Sections 3470, *et seq.,* L. O. L., furnish a means of executing the former section, independent of its own terms. The two sections are here set out, the former in full, and the latter as far as applicable to the matter in hand:

Article IX, Section 1*a*: "No poll or head tax shall be levied or collected in Oregon. No bill regulating taxation or exemption throughout the State shall become a law until approved by the people of the State at a regular general election. None of the restrictions of the constitution shall apply to measures approved by the people declaring what shall be subject to taxation or exemption and how it shall be taxed or exempted whether proposed by the legislative assembly or by initiative petition; but the people of the several counties are hereby empowered and authorized to regulate taxation and exemptions within their several counties, subject to any general law which may be hereafter enacted."

Article IV, Section 1*a*: "* * The initiative and referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation. * * "

Much was said in the argument, and printed in the brief of the plaintiff here, to the effect that we must consider the design of the initiative system in general and the sections under consideration in particular as affecting the canon of construction to be applied to the matter at issue. The essence of the argument for the petitioner is that the general purpose of the whole system was to restore political power to the people. This argument is fallacious and misleading. Political power in this State has always resided in the people. Whatever of constitu-

tion we have, as the supreme law of the land in this commonwealth, has been ordained and promulgated by a direct vote of the people. Nay, more. Every legislative assembly that has ever convened in the State has been the creature of the people by their direct vote. In the constitution under which Oregon was admitted into the Union, the people, by a stately preamble, declared that, "We, the people of the State of Oregon, to the end that justice be established, order maintained, and liberty perpetuated, do ordain this constitution." It is not a question of restoring power to the people. They have always had it. In the beginning of the State government, it was declared, and has ever since been recognized throughout the State, "that all power is inherent in the people, and all free governments are founded on their authority, and instituted for their peace, safety and happiness, and they have at all times a right to alter, reform or abolish the government in such manner as they may see proper." Article I, Section 1, State Constitution.

It is for courts and judges, as servants of the people, charged with that duty, to take all the constitutional and statutory utterances of the people and construe them, so that, if possible, all shall stand, and the will of the people shall be subserved. The people have declared, in Section 32, Article 1, of their constitution, that:

"No tax or duty shall be imposed without the consent of the people or their representatives in the legislative assembly and all taxation shall be equal and uniform."

They have also proclaimed, in Section I of Article IX, that:

"The legislative assembly shall provide by law for uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, except such only for municipal, educational, literary, scientific, religious or charitable purposes as may be specially exempted by law."

Neither of these sections has been repealed or lessened in force, but is only supplemented by either Section 1*a* of Article IV, or Section 1*a* of Article IX. The obvious effect of all these sections, taken together, is to maintain uniformity of taxation as against the operation of all mere agencies of government. Under Section 1*a* of Article IX, only as to the people at large are the restrictions upon the power of taxation removed. It is there laid down that:

"None of the restrictions of the constitution shall apply to measures approved by the people declaring what shall be subject to taxation or exemption," etc.

But it does not appear, either in direct terms or by necessary inference, that the restraints of the fundamental law on the subject in question have been removed from any subordinate instrumentality of government. This construction is still further strengthened by the language at the end of Section 1*a* of Article IX, declaring that the regulation of taxation and exemptions by the people of the several counties shall be "subject to any general law which may be hereafter enacted."

The "local law," so called in the writ which the petitioner would compel the defendant to submit to the voters of Clackamas County, is obnoxious to the requirement of uniformity of taxation so prominent in the basic law which the people themselves have promulgated. By general law the State must, by taxation, raise revenue to provide for the maintenance of the State institutions and other legitimate expenses. For instance, by the initiative law enacted by the people at the general election in November, 1910, there is levied an annual tax of 1-25 of a mill on the dollar upon all the taxable property within the State for the support and maintenance of the Normal School at Monmouth. Again, by Section 4381, L. O. L., the county courts of the several counties of the State are authorized and directed to levy, in addition to the taxes now authorized to be levied by law, a tax, not

exceeding 1-10 and not less than 1-30 of one mill upon the taxable property in their respective counties to create a fund for the relief of indigent soldiers, sailors, and marines. There are fixed annual appropriations for the support of the State University and the State Agricultural College. There are also fixed salaries for the public officers of the State, and many other items might be mentioned, showing the necessity for the State to arrange for its revenue by taxation, uniform in its character throughout the State. Without attempting to differentiate between county taxation and taxation for State purposes, the bill proposed is to exempt from taxation, without any distinction, all personal property and everything else, except land and public corporation franchises and rights of way. If the purpose of this bill is carried out, the uniformity of taxation will be destroyed. When the State with its taxing power, approaches the county of Clackamas, it will find there, exempted from the taxing authority of the State, a large proportion of property that is not exempted in other counties. It will concede the power to Clackamas County alone to undermine the State government and destroy its supremacy by depriving it of the means of carrying on the State government. It will restore in a more vicious form the old regime, when, for the purpose of avoiding as much as possible of State taxes, county assessors and boards of equalization vied with each other in listing property at values ridiculously less than its real worth. Against this possible disintegration of the State, the people have wisely interposed the accompanying condition that the power of the common people of the several counties to regulate taxation and exemption within their counties "shall be subject to any general law which may be hereafter enacted." The people (meaning the people of the whole State, and not any local group) have the power to designate the objects of taxation, and the people at large have also the right to dis-

criminate as to the sources of its revenue, so long as they comply with their self-imposed constitution; but that discriminating power is not lodged in any other source whatever. Until the people at large have prescribed a rule, whereby the people of the several counties may exercise the right to regulate taxation and exemption within the several counties, the clause upon which the petitioner here relies announces but a mere principle, without a procedure provided for its execution.

That Section 1a of Article IX, reads standing alone, is not self-executing, without further legislation of the subject, is practically conceded by the petitioner. The trend of his argument is that his right to have the bill presented to the people depends upon Section 1a of Article IV, reserving to the legal voters of every municipality and district of this State the initiative and referendum power as to all local, special, and municipal legislation of every character in or for their respective municipalities and districts. He argues at great length and with great skill and quotes many definitions to show that the terms "municipality" and "district," in Section 1a of Article IV necessarily include counties. Section 2861, L. O. L., which has been the law of the territory and State since 1854, reads thus:

"Each county shall continue to be a body politic and corporate for the following purposes, to wit, to sue and be sued, to purchase and hold for the use of the county lands lying within its own limits and any personal estate; to make all necessary contracts, and to do all other necessary acts in relation to the property and concerns of the county."

For present purposes, this definition is of more authority than those of publicists and lexicographers. The people must have had in mind this delimitation of the powers of a county when they enacted Section 1a of Article IV. By the terms of the statutory definition, and

by the long-continued construction of the word "county,"
no legislative authority was imparted to such an organ-
ization. The term "county," as applied to a political
division of the State for the purposes described in Section
2861, L. O. L., was so well understood by the people that
if they had intended to confer legislative authority upon
a county they would have included it in Section 1a of
Article IV by that name, and not have concealed it in the
vague terms "municipality" and "district."

Moreover, the legislative power described in Section 1a
of Article IV is confined to local, special, and municipal
legislation in and for the respective municipalities and
districts. Whatever we may say as to what groups of
people, less than the whole people, may exercise legislative
power thus reserved, still the lawmaking power described
in Section 1a of Article IV is confined to local, special, and
municipal legislation. Although, by Section 1a of Article
IX, the regulating power of the people of a county is
restricted to "taxation and exemptions within their several
counties," the proposed legislation is not limited, in its
effect, to Clackmas County. It is not local, special, or
merely municipal. Insomuch as, by its system of exemp-
tions, it would shift some of its burden of State taxation
to rest upon other counties, it affects more or less power-
fully the whole taxation system of the State. It is beyond
the scope of Section 1a of Article IV, and is not authorized
by that section.

Another argument of the petitioner is that the words
at the end of Section 1a of Article IX, "subject to any
general law which may be hereafter enacted," are a con-
dition subsequent, and that until a general law is enacted
the people of the several counties have free rein to
regulate taxation and exemption therein. In this con-
nection, he contends that Section 1a of Article IV provides
the means and rule for carrying into effect this provision
of Section 1a of Article IX. In other words, as he claims,

they have a vested, constitutional right, under Section 1*a* of Article IV, to thus legislate. If this position is true, the words "subject to any general law which may be hereafter enacted," is pure tautology, and had as well been left out of the amendment to Article IX. They are worse than useless, if the position of the petitioner is correct on this point; for, if any subsequent legislation attempted to curtail the rights of a municipality, as exercised in that behalf, under Section 1*a* of Article IV, they could well say that it would be unconstitutional and violative of the county's power so conferred. The petitioner would avoid this by saying that subsequent legislation under the clause, "subject to any general law which may be hereafter enacted," at the end of Article IX, would be effective, because passed in pursuance of a later utterance of the people in the constitution; but if the condition laid down in Section 1*a* of Article IX, being a later expression of the people's will, is to prevail over Section 1*a* of Article IV, it has that effect immediately. It is as much a restraint now as it will be hereafter. A more reasonable view, harmonizing both these sections, is that Section 1a of Article IV is confined to strictly local, municipal legislation, and will not authorize legislation which, either directly or indirectly, affects the interest and authority of the State at large; and, further, that until the people of the whole State shall enact such legislation as a general law, establishing a rule governing all the counties in the exercise of the power to regulate taxation and exemption within their borders, nothing can be done by any county under Section 1*a* of Article IX.

The situation presented, then, is that this court is asked to apply mandamus to an officer of a co-ordinate branch of the government, sworn, like the judges, to support the constitution of the State, and compel him to officially participate in furthering a scheme in derogation of that same constitution, and to burden the people of the county

with the expense of an election on a legislative measure which, in any view, is in excess of their constitutional powers. That mandamus is an extraordinary remedy, not to be awarded, unless the right to the same is beyond question, is so well established as to be axiomatic, rendering the citation of precedents unnecessary. At best, the authority to thus coerce the Secretary of State is not clear, and the writ ought to be dismissed.

For these reasons, I dissent from the conclusion reached in the majority opinion.