Argued September 25, affirmed October 9, rehearing denied November 20, 1917.

# BARBER v. JOHNSON.

(167 Pac. 800; 1183.)

**Elections—Election Without Authority of Law.**

1. An election held without authority of law is ineffectual for any purpose.

**Counties—Removal of County Seat—Procedure.**

2. Sections 2877–2885, L. O. L., provide a manner for changing county seats. Article IV, section 1, of the Constitution, provides for the initiative and referendum with reference to proposed laws or constitutional amendments. Section 1a reserved the initiative and referendum to the legal voters of every municipality and district as to all local, special and municipal legislation of every character. Sections 3470–3485, L. O. L., provide a procedure for the enforcement of Section 1a. Jefferson County was created under the authority of a general enabling act (Laws 1913, pp. 21–29). Section 6 of the act provides that the County Court shall have power to temporarily fix the county seat, and that such location shall remain the county seat until the first general election thereafter, when the qualified voters are empowered to select the place of the county seat in the manner provided by law. The necessary action to create the county seat was taken at the general election in 1914, and immediately thereafter the County Court named C. as the temporary county seat. On November 7, 1916, the electors voted for a removal of the county seat complying with requirements of Sections 3470–3485, L. O. L. *Held*, that the people of the county were empowered to determine the matter at the time they passed on it, and that the county seat was lawfully changed.

**Counties—Fixing County Seat—"Legislation."**

3. The fixing of a county seat pursuant to Article IV, Laws of 1913, pages 21–29, was "legislation" within Section 1a of the Constitution, reserving to the voters of every municipality and district the initiative and referendum as to local, special and municipal legislation.

**Counties—Fixing County Seat—Notice of Election.**

4. Where notice of an election for the location of a permanent county seat was given by mailing a pamphlet to every voter as required by initiative measure, Section 3478, L. O. L., the location was valid although the notice of the general election at which the question was voted on failed to notify the electors that the question would be submitted.

   [As to notice of election in respect to a special measure, see note in 120 Am. St. Rep. 795.]

From Jefferson: T. E. J. DUFFY, Judge.

Suit by W. C. Barber against W. E. Johnson, County Clerk of Jefferson County, Oregon, in which a

decree was rendered dismissing the complaint and plaintiff appealed.     Affirmed.

Department 2.     Statement by MR. JUSTICE MC-CAMANT.

This is a suit brought to enjoin the county clerk of Jefferson County from canvassing and certifying the returns of an election held November 7, 1916, upon the question of the removal of the county seat.   Plaintiff alleges that he is a large property holder at Culver, which was the county seat of Jefferson County prior to January 1, 1917, and that the removal of the county seat would depreciate the value of plaintiff's property. The complaint also alleges that such removal would necessitate the abandonment of a satisfactory courthouse and jail and the construction of new buildings to serve the same purpose, all at the public expense and to the damage of plaintiff as a taxpayer.   It is admitted that a majority of the electors voting on the question favored the removal of the county seat to Madras, but it is alleged that the election on the question of such removal was without authority of law and that the notice of the election given by the defendant made no mention of this question. ·

The answer joined issue with many of the allegations of the complaint and set up affirmatively the steps taken to provide for the election in question. There was no reply and the affirmative matter in the answer is therefore admitted.   A stipulation was entered into defining the matters in dispute between the parties, all of which are questions of law.   On consideration of this stipulation and of the pleadings, the Circuit Court dismissed the complaint and plaintiff appeals.               AFFIRMED.   REHEARING DENIED.

For appellant there was a brief over the names of *Messrs. Huston & Huston* and *Mr. W. P. Myers,* with an oral argument by *Mr. Samuel B. Huston.*

For respondent there was a brief and an oral argument by *Mr. William S. U'Ren.*

MR. JUSTICE McCAMANT delivered the opinion of the court.

In 1903 the legislature passed an act providing the manner in which the inhabitants of a county might change their county seat. This act, incorporated in the Code as Sections 2877–2885, provides that a petition signed by qualified electors, equal in number to three fifths of the votes cast at the last general election, shall be necessary to initiate the proceeding. Plaintiff contends that this statute provides the only method by which a county seat may be changed without an act of the legislature or of the people under the initiative, providing for the change. It is admitted that the act of 1903 was not complied with and plaintiff's chief insistence is that the proceedings taken were for this reason nugatory.

1. It is true, as contended by plaintiff, that an election held without authority of law is ineffectual for any purpose: *Andrews* v. *Neil,* 61 Or. 471, 478 (120 Pac. 383, 123 Pac. 32); *Equi* v. *Olcott,* 66 Or. 213, 215, 216 (133 Pac. 775). The defendant contends that the election in question was authorized by the amendments to the Constitution providing for the initiative and referendum and the legislation enacted for carrying these constitutional provisions into effect.

The first of these amendments was adopted by the people in 1902. It provided that on petition of not to exceed eight per cent of the legal voters of the state,

any proposed law or amendment to the Constitution should be put on the ballot to be voted on by the people at the next general election; also that a majority vote of those voting on the measure should be sufficient for its adoption.

In 1906 the Constitution was further amended by the addition of Section 1a to Article IV. This section is in part as follows:

"The initiative and referendum powers reserved to the people by this Constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation."

In 1907 the legislature passed an act providing a procedure for the enforcement of this constitutional provision. This act is found in the Code as Sections 3470–3485.

The constitutional provision has frequently been before this court for construction. It is held in *Schubel v. Olcott,* 60 Or. 503 (120 Pac. 375), that the amendment to the Constitution adopted in 1906, as applied to districts other than cities and towns, is not self-executing, but that Sections 3470–3485 of the Code provide an appropriate procedure for putting it into effect. It is squarely held by this decision that a county is a municipality or district within the purview of this constitutional amendment. Further light has been thrown on the question by two of the recent decisions of this court: *State ex rel.* v. *Port of Astoria,* 79 Or. 1 (154 Pac. 399), and *Rose* v. *Port of Portland,* 82 Or. 541, 557, 558 (162 Pac. 498). These two opinions

contain so thorough an analysis of the constitutional provision in question that it would be superfluous to restate the reasoning or even the conclusions reached. It will suffice for present purposes to quote briefly from these opinions. In the first of these cases, at pages 22, 23, of the report, Mr. Justice HARRIS says:

"By the terms of Article IV, Section 1a, every municipality, whether it be a city or town, or whether it be a port, has the right to employ the initiative and referendum powers 'as to all local, special, and municipal legislation,' and this means that such municipality may apply the initiative and referendum powers when enacting municipal legislation to carry out and make effective an authority previously granted. * * It seems clear then that municipal legislation, within the meaning of Section 1a of Article IV, when applied to municipalities, other than cities and towns, refers to legislation which is permitted and made necessary for carrying into effect a lawful power previously granted. * * A port has no right to legislate unless that right is first created by law; but, when the right to legislate is conferred, then Section 1a of Article IV immediately operates, and the initiative and referendum are at once made available, and the exercise of such power to legislate is municipal legislation."

In *Rose* v. *Port of Portland,* 82 Or. 541, 557, 558 (162 Pac. 498), it is said:

"No subdivision of government like a port or district can exercise power unless that power is first granted by some lawmakers authorized to legislate that power to the municipality or district."

A county, like a port, is a municipal corporation other than a city or town: *Cook* v. *Port of Portland,* 20 Or. 580, 584 (27 Pac. 263, 13 L. R. A. 533). The language quoted from the above opinions is as applicable to a county as to a port. It is settled law, therefore, that the amendment of 1906 is applicable to counties;

that the amendment is not self-executing; that the powers granted to the people of the respective counties under the initiative are not unlimited; that he who would uphold the action of the people of a county under the initiative must point to some grant of power to act on the subject in question; that when the power is shown to exist Sections 3470–3485, L. O. L., provide a procedure adequate for its exercise.

2. It remains to apply these principles to the facts of this case. Jefferson County was created under the authority of a general enabling act, adopted by the legislature in 1913 and found in the session laws of that year at pages 21–29. The necessary action to create the county was taken by the people interested at the general election in 1914. Immediately after that election the County Court named Culver as the temporary county seat. The authority so to do is found in Section 6 of the act of 1913. That section is as follows:

"The County Court of such new county shall have power to temporarily fix the county seat, and such location shall remain the county seat until the first general election thereafter, when the qualified voters of such new county are empowered to vote for and select the place of county seat in the manner provided by law. Immediately after the selection of such county seat either by the County Court or by the canvass of the returns of votes cast at the election for that purpose, the County Court shall issue its proclamation and publish the same in a newspaper published in such new county, if there be one, and if not by posting a copy of such proclamation in each election precinct in such county announcing the selection and location of such county seat."

It will be noted that by this statute the legislature gave the people of the new county the express power to

determine where their county seat should be and that this power was to be exercised at the first general election following the organization of the county. The legislature must have referred to the general election held November 7, 1916, at which time the question was actually determined by the people. We have no difficulty in holding that the people of Jefferson County were empowered to determine this matter at the time when they passed on it. The stipulation of the parties admits that the requirements of Sections 3470–3485, L. O. L., were complied with.

3. Plaintiff contends that the fixing of this county seat was not "legislation" within the purview of Section 1a of Article IV of the Constitution, and cites *Fouts* v. *Hood River,* 46 Or. 492 (81 Pac. 370, 7 Ann. Cas. 1160, 1 L. R. A. (N. S.) 483). This case merely holds that the local option law adopted by the people in 1904 is not obnoxious to constitutional objection on the ground that the expediency of prohibiting the sale of liquor in each county or precinct is referred to the electors of such county or precinct for determination. The language of the constitutional provision in question is:

"The initiative and referendum powers * * are hereby further reserved to the legal voters of every municipality and district, as to all local, special and municipal legislation, of every character, in and for their respective municipalities and districts."

The words "of every character" must mean something and were inserted for a purpose. They forbid a narrow technical construction of the word "legislation."

"Legislation" is defined by March's Thesaurus as the "enactment of laws." Bouvier, Words and Phrases, 18 Am. & Eng. Enc. Law (2 ed.), 822, and 25 Cyc. 181, unite in the definition, "The act of giving or

enacting laws.'' A county seat is ordinarily fixed by act of the legislature. The lawful act of the people of a county changing their county seat is local legislation within the purview of Section 1a of Article IV of our Constitution.

4. The final contention of plaintiff is that these proceedings are void for the reason that the notice of election failed to notify the electors that this question would be submitted to them for their determination. Our attention is directed to a number of authorities holding elections void for want of notice to the electors, but they were all cases wherein the statute required the notice which was omitted. Sections 3470–3485, L. O. L., make no provision for posting or publishing a notice of the initiative measures to be voted on at a general election. Section 3478 provides that the Secretary of State shall incorporate in a pamphlet the text of all such measures with arguments for and against their adoption, if such arguments are tendered, and it is provided that this pamphlet shall be mailed to every voter. The legislature evidently regards this notice as sufficient. If we were to read into the statute a requirement for further notice which the legislature has not put there, we would legislate judicially.

We think the county seat of Jefferson County has been lawfully changed and the decree is affirmed.

AFFIRMED.    REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BEAN concur.

' Rehearing denied November 20, 1917.

ON PETITION FOR REHEARING.

(167 Pac. 1183.)

On petition for rehearing.   Denied.

*Messrs. Huston & Huston* and *Mr. W. P. Myers,* for the petition.

*Mr. William S. U'Ren, contra.*

Department 2.   MR. JUSTICE McCAMANT delivered the opinion of the court.

It is earnestly insisted in plaintiff's petition for a rehearing that we have erred in the construction placed upon Section 6 of Chapter 10 of the Session Laws of 1913.   This section authorizes the qualified voters of a new county "to vote for and select the place of county seat in the manner provided by law." It is contended that the only provision of law which the legislature had in mind and to which the above statute can be referred is Chapter 3 of Title XXV, comprising Sections 2877 to 2885, L. O. L.   These sections of the Code are an act passed in 1903 empowering the inhabitants of any county to remove their county seat.   The act provides that on petition of three fifths of the electors of any county it shall be the duty of the County Court to submit at the next general election the question of removing the county seat. The people of the several counties required no grant from the legislative assembly of 1913 in order to make this remedy available to them.   They had enjoyed for ten years the powers conferred by Sections 2877–2885, L. O. L.   Section 6 of the Act of 1913 pur-

ports to grant to the electors of a new county the power to select their county seat at the first general election following the organization of the county. If the power granted by Section 6 of the Act of 1913 is the power given ten years before by Sections 2877–2885, so much of the later act as authorizes an election to determine the county seat is surplusage and has no legal effect. The clear reference in Section 6 of the Act of 1913 is to a law providing a manner for exercising the power granted.

We are accustomed to the exercise of popular power by majorities. When the legislature empowers the qualified electors of the new county to vote for and select the place of county seat, the language, construed in harmony with the ordinary use and meaning of the words used, imports a grant to the majority to act in the premises, not a grant conditioned on preliminary action by three fifths of the electorate.

Section 1a of Article IV was incorporated in the Constitution in 1906. In 1907 the legislature enacted a statute to make it effective. The case of *Schubel* v. *Olcott,* 60 Or. 503 (120 Pac. 375), was decided in 1912. In his opinion in this case Mr. Justice BEAN says:

"Article IV, Section 1a, and Article IX, Section 1a, of the Constitution, are not self-executing in respect to counties, as they make no provisions regarding the manner of their enforcement. By the first of these, the initiative and referendum powers reserved by the people are further reserved to the legal voters of every municipality and district as to all local, special and municipal legislation of every character in their respective municipalities and districts. By the second, the people of the several counties are empowered and authorized to regulate taxation and exemptions within their several counties, subject to any general law which may be hereafter enacted. In Article IV, Section 1a, it is specifically provided that

the manner of exercising such powers shall be prescribed by general laws, except as to cities and towns; neither section containing rules by means of which this right may be given the force of law as regards local legislation in counties. * * Hence we must look at the general laws of this state for the manner of executing these sections of the organic law.

"Turning to the legislative enactment of 1907, being Section 3470 et seq., L. O. L., it appears that the legislature intended to and did make all the necessary rules for carrying into effect the initiative and referendum provisions of the Constitution."

"A county is a public corporation, classed with cities, towns, and villages, and invested with subordinate legislative powers to be exercised for local purposes connected with the public good, and subject to the control of the State: 2 Kent, *275."

The legislative assembly of 1913 was familiar with Article IV, Section 1a of the Constitution, with the Act of 1907, Sections 3470–3485, L. O. L., and with the construction so recently placed upon these provisions by this court. The natural interpretation of Section 6 of the Act of 1913 connects it with the foregoing provisions of law, as defining the manner of exercising the power granted.

Nor does the concluding sentence of Section 6 militate against the correctness of the above reasoning. This concluding sentence is as follows:

"Immediately after the selection of such county seat either by the County Court or by the canvass of the returns of votes cast at the election for that purpose, the County Court shall issue its proclamation and publish the same in a newspaper published in such new county, if there be one, and if not by posting a copy of such proclamation in each election precinct in such county announcing the selection and location of such county seat."

It is provided by Section 3420, L. O. L., that on the completion of the canvass of the votes cast in each

county the county clerk shall make a record of the
vote of the electors on all measures voted on. The
county clerk is clerk of the County Court: Const., Art.
VII, § 15. The record being readily accessible to the
County Court and the matter being one of local inter-
est chiefly, provision is made that the County Court
shall proclaim the result in a manner well calculated
to advise the community. It was a reasonable exer-
cise of the power of the legislature to provide for such
local announcement in addition to the gubernatorial
proclamation provided for by Section 3479, L. O. L.

It is contended that we are in error in holding that
the selection of a county seat is legislation within the
purview of Article IV, Section 1a of the Constitu-
tion. Plaintiff cites *McWhirter* v. *Brainard,* 5 Or.
426, 430, and the following decisions wherein the above
case is discussed: *Baker County* v. *Benson,* 40 Or. 207,
221 (66 Pac. 815); *State* v. *Corvallis & Eastern R. R.
Co.,* 59 Or. 450, 458 (117 Pac. 980); *Murdoch* v.
*Klamath County Court,* 62 Or. 483 (126 Pac. 6). We
find no intimation in any of these decisions that the
change of a county seat is not legislation. The ques-
tion mooted in *McWhirter* v. *Brainard* was the con-
stitutionality of the enabling act for locating the
county seat of Union County. It was contended that
the act was unconstitutional as delegating legislative
power to the people. The constitutional amendments
referred to in the former opinion have made this ques-
tion purely academic in this jurisdiction. It was
held that under the facts involved in *McWhirter* v.
*Brainard* the change of county seat was to be deemed
made by the legislature although it became effective,
if at all, by a vote of the electors interested. This de-
cision and the other decisions in which this case is dis-

cussed all imply that the location and removal of county seats are legislative functions. We think it follows that it was competent for the legislature to clothe the people of Jefferson County with power to act in the premises and that therefore the initiative provisions of the Constitution and Sections 3470–3485, L. O. L., became applicable.

It is contended that we are in error in assuming that the stipulation on which the case was tried admits that the requirements of Sections 3470–3485, L. O. L., were complied with. The stipulation is in part as follows:

"If the Court shall be of the opinion that there are no omissions or defects in the notice of election given herein and which is set out in the amended complaint and also in the answer, that are sufficient to invalidate the election as to the said bill for a local law, being Numbers 322 to 323 on the official ballot, and shall also be of the opinion that proceedings for the location of the county seat may be had under the initiative and referendum provisions of Chap. 3, Title 25 of L. O. L., then the Court shall overrule the demurrer of the plaintiff and give judgment for the defendant dismissing this suit."

This language is a clear waiver of any irregularities in complying with the above provisions of the Code. The legal effect of the stipulation is therefore as stated in the former opinion. We may add that the answer sets up in detail the steps taken in compliance with these provisions and there is no reply. The affirmative allegations of the answer are therefore admitted.

We adhere to the former opinion and deny the petition for a rehearing.

AFFIRMED.    REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BEAN concur.