Argued October 19, writ dismissed October 29, 1971

ROBERTS, *Petitioner, v.* MYERS, *Respondent.*

489 P2d 1148

*Morton A. Winkel,* Portland, argued the cause and submitted a brief for petitioner.

*John W. Osburn,* Solicitor General, Salem, argued

the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

O'CONNELL, C. J.

This is an original proceeding in mandamus. We issued an alternative writ requiring defendant to show cause why he should not accept plaintiff's filing of candidacy for a seat in the House of Representatives of the Oregon Legislative Assembly.

Defendant's refusal to accept the filing is based upon the ground that single member electoral units were established by defendant pursuant to our decision in *Hovet v. Myers,* 260 Or 152, 489 P2d 684 (Sept. 30, 1971), and that petitioner is not an inhabitant of the electoral unit which he sought to represent.

The inhabitancy requirement for Senators and Representatives in the Oregon Legislative Assembly is contained in Art. IV, § 8, Oregon Constitution, which reads as follows:

> "No person shall be a Senator, or Representative who at the time of his election is not a citizen of the United States; nor anyone who has not been for one year, next preceeding (sic) his election an inhabitant of the county, or district whence he may be chosen. * * *"

When this provision of the constitution was adopted a legislative district could be no smaller than a county. However, a district could be comprised of more than one county. Thus residency in the county was required in the case of a single county district, whereas residency in any county in the district was permissible in multi-county districts.

It seems clear that the purpose of Section 8 was

to require the legislator to be an inhabitant of the electoral unit from which he was elected or, in the words of the section, "whence he may be chosen."

■ The requirement that the legislator be "an inhabitant of the county, or district whence he may be chosen" is susceptible to two possible interpretations where subdistricts are created within the district: (1) a literal interpretation accepting the words "county" and "district" as the controlling language, thus permitting a legislator to represent the people in a subdistrict if he is a resident in any part of the county or district, and (2) an interpretation based upon the assumption that Section 8, although cast in terms of a residency requirement related to county or district, was in fact an expression of a more fundamental principle that regardless of the name given to the electoral unit involved, whether a county, a larger district, or a smaller district, the person representing the unit must be an inhabitant of it.

We regard the latter interpretation as the more reasonable. At the time of the adoption of Art. IV, § 8, there was no electoral unit smaller than a county. Had there been such smaller units we can think of no compelling reason for excluding the application of the residence requirement to the smaller unit. It is true that the other interpretation would provide a larger reservoir of candidates, some of whom might be more capable than candidates within the subdistrict. But against this is the consideration that a legislator best represents his constituency when he lives among them, has knowledge of their problems and is more readily available to those he represents. We think that the latter considerations prompted the adoption of Art. IV, § 8.

Our attention is called to a 1954 amendment to Art. IV, § 7 providing that "[s]enatorial or representative districts comprising not more than one county may be divided into subdistricts from time to time by law."[①] It is contended that the adoption of this amendment indicates an intention to amend by implication Art. IV, § 8 so that a legislator would no longer be required to be an inhabitant of the electoral unit which he represents.

Taking the language of Section 8 literally, a legislator representing a subdistrict could be held to satisfy the residency requirement by living in the county which embraces the subdistrict, although not in the subdistrict itself. If, however, Section 8 is read as expressing a basic principle of representation that a legislator live among those he represents, regardless of the size of his constituency, then application of Section 8 would not be modified by the amendment to Section 7 permitting subdistricts.

But for one consideration which we shall mention later, the amendment to Section 7 permitting subdistricts does not reflect on the people's concern with residency requirements for legislators representing subdistricts. There was, at the time of the adoption of the amendment, ample reason for permitting the Legislature to divide a county into smaller elec-

---

[①] Art. IV, § 7, in its entirety, reads as follows:

"A senatorial district, when more than one county shall constitute the same, shall be composed of contiguous counties, and no county shall be divided in creating such senatorial districts. Senatorial or representative districts comprising not more than one county may be divided into subdistricts from time to time by law. Subdistricts shall be composed of contiguous territory within the district; and the ratios to population of senators or representatives, as the case may be, elected from the subdistricts, shall be substantially equal within the district."

toral units. Without such a subdivision, voters in a populous county such as Multnomah County were required to choose their legislators from a long list of candidates, many unknown to at least some of the voters, in marking their ballots. The size of this type of ballot earned it the name of "bed sheet ballot."

It seems apparent that the amendment to Section 7 was represented to the public solely as a remedy to this cumbersome method of electing legislators in a heavily populated multi-member district, and as making such legislators responsible to specific groups of voters. The Voter's Pamphlet explaining the proposed amendment mentions the problem of the cumbersome ballot but contains no reference to a residency requirement.

■ We postponed above a possible consideration which arguably indicates that the amendment of Section 7 was nonetheless intended to deal with the residency requirement. It has been suggested that the term "subdistrict" has meaning only in relation to the residency requirement; that if Art. IV, § 7 was intended not only to permit a division of a county or district, but also thereby to require residency in the subdivision, the drafters would have simply provided that a county may be divided into two or more districts. The term "subdistrict" was used in Section 7, it is said, to contrast with the term "district" in Art. IV, § 8, and to allow residence in the district but outside the subdistrict thereunder.

We think it is equally plausible to assume that the term "subdistrict" was used in Section 7 simply to describe the subdivision of the district into smaller areas without reference to the residency problem. In view of the common, if not universal practice of mak-

ing reference in the statutes to a county as a legislative district, it was only natural in providing for the subdivision of a district to denominate the subdivisions as subdistricts. It is evident from legislative materials relating to apportionment and subdistricting legislation that members of the Legislature themselves have used the term "subdistrict" on such assumption. For example, in drafting the original apportionment bill in 1953 (S.B. 40) it was provided expressly in addition to the subdistrict scheme created therein, that a legislator representing a "subdistrict" was required to be a resident thereof. The provision was deleted for reasons not disclosed in the legislative history of the bill.[2]

From the foregoing it is clear that the use of the

[2] An examination of the legislative history of Oregon legislation in which subdistricting is involved indicates that the requirement of residency within the subdistrict was favored but that it was not included in the bills because of the fear that such a requirement for subdistrict representation might violate Art. IV, § 8. The 1951-53 Reapportionment Interim Committee Report recommended that the 1953 Legislature create electoral subdistricts by statute and impose a residency requirement on them. 1953 S.B. 40 followed both recommendations and was approved in its entirety by the Senate Committee on Elections and Privileges. Before the bill was reported back to the Senate, however, an emergency meeting of the committee struck the residency requirement from it. Exhibits for the 1955 Senate Committee on State and Federal Affairs imply that the sudden deletion was due solely to a letter, dated the day of the emergency meeting, from the Attorney General to the 1953 committee chairman, expressing the opinion that the residency requirement contravened Article IV, § 8. Subdistrict residency requirements were proposed and favorably discussed in the 1953 House Committee on Elections and Reapportionment during consideration of 1953 H.J.R. 20, which embodied the 1954 subdistrict-creating amendments to Article IV, §§ 3 and 7, and in the 1955 Senate Committee on State and Federal Affairs, during consideration of 1955 S.B. 6 (now ORS 171.043), which demarcated subdistricts in Multnomah County. Each time, however, the proposals died when committee members asserted that Article IV, § 8 required residence only within the district or county and forbade a narrower statutory requirement.

term "subdistrict" in Art. IV, § 7 does not reveal one way or the other what was intended with respect to the residency requirement applicable to legislators representing a subdistrict.[9]

We hold that Art. IV, § 8 requires a legislator to be an inhabitant of the electoral unit "whence he may be chosen." Therefore, the alternative writ of mandamus is dismissed.

BRYSON, J., dissenting.

I do not believe it is necessary to resort to legal or resourceful reasoning to interpret language as clear and unambiguous as that appearing in Art. IV, § 8 of the Oregon Constitution, which reads:

"No person shall be a Senator, or Representative who at the time of his election * * * has not been for one year next preceeding (sic) his election an inhabitant *of the county, or district* whence he may be chosen * * *." (Emphasis supplied.)

This language was devised in the Constitutional Convention of 1857 and became effective as a part of the original constitution when the State of Oregon was admitted into the Union on February 14, 1859. The county has always been regarded as a significant part, or concept, of this state's form of government, and if the framers of the Oregon Constitution intended that a Senator or Representative live exclusively in the district from whence he may be chosen, there was no reason to provide that the legislator live in the "county, or district." They would have merely provided that the Senator or Representative must be an inhabitant of the district.

---

[9] Art. IV, § 3 also refers to "subdistricts," but there is nothing in that section which relates in any way to the residency requirement.

The more important issue is that this court should not resort to changing or deleting clear and specific language from the Oregon Constitution. That is a right reserved by the people of the State of Oregon, pursuant to Art. XVII of the Oregon Constitution. In *Monaghan v. School District No. 1,* 211 Or 360, 315 P2d 797 (1957), this court stated:

"* * * It is to be presumed that the language [of the constitution] which has been employed is sufficiently precise to convey the intent of the framers of the instrument. To find the thought a given section expresses, the first resort in all cases is to the natural signification of the words used in the order of the grammatical arrangement in which they have been placed. If thus regarded the words embody a definite meaning, involving no absurdity and no contradiction between different parts of the section construed and that meaning apparent on its face is the very one we are at liberty to say was intended to be conveyed. In such a case, there is no room for construction. Where one meaning is plainly declared in the instrument, the courts are not at liberty to search elsewhere for possible or even probable meanings. Schubel v. Olcott, 60 Or 503, 512, 120 P 375; 1 Cooley's Constitutional Limitations (8th ed) p 124; 16 CJS 81, Constitutional Law § 19." 211 Or at 366.

While it is not decisive in this case, it can be argued that there is no inherent wrong in allowing the people a wider choice from which to choose their representatives in the State Legislature by selecting them from any place in the county rather than within a limited district. It might also be desirable that a legislator reside specifically in the smaller district and thereby become better acquainted with his constituents. However, this is a decision for the people to make now that this court has, in *Hovet v. Myers,*

260 Or 152, 489 P2d 684 (Sept. 30, 1971), approved the concept of single member districts in order to meet the federal requirement of "one man, one vote."

For this reason, I would grant the alternative writ of mandamus as applied for.