Argued April 21, affirmed May 5, 1954

# KOSYDAR *v.* COLLINS, COUNTY CLERK

270 P. 2d 132

*Norman K. Winslow,* of Salem, argued the cause for appellant. With him on the brief was W. C. Winslow, of Salem.

*Frank S. Sever,* of Portland, argued the cause for respondents. With him on the brief were William T. Hollen, District Attorney, and A. R. McMullen, Deputy District Attorney, both of Newport.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN and TOOZE, Justices.

TOOZE, J.

This is a suit for an injunction, brought by John D. Kosydar, as plaintiff, against R. E. Collins, county clerk; Tom M. Skelton, county judge; L. T. Grant, county commissioner; Ray Cox, county commissioner; W. H. Kurlenbeck, sheriff; and John T. Graham, county assessor; all of Lincoln county, Oregon, as defendants. Decree was entered in favor of defendants; plaintiff appeals.

By this suit, plaintiff, a taxpayer and resident of Lincoln county, is making a direct attack upon the

validity of an election held in Lincoln county on November 4, 1952 (date of the general election held throughout the state), at which election there was submitted to the legal voters of that county for their approval or rejection an initiative measure providing for the removal of the county seat from Toledo to Newport. At said election there were 4,643 votes cast in favor of such measure and 4,362 votes against it. Pursuant to this majority vote in favor of such removal of the county seat, defendants are proceeding to take the steps necessary to accomplish that result.

Plaintiff does not challenge the actual voting within the county at said election, but he does challenge, in several particulars, the procedure by which the initiative measure seeking to remove the county seat was placed upon the ballot.

The record reveals that on June 12, 1952, there was filed with the county clerk for Lincoln county, an initiative petition for the submission to the legal voters of that county the following proposed local law:

## "PROPOSED LOCAL LAW
### AN ACT

"To remove the county seat of Lincoln County, Oregon, from the City of Toledo, where now situated, and to establish it at the City of Newport, in said county, and to repeal any and all laws locating or establishing the county seat of said county at Toledo therein.

"Be it enacted by the people of the County of Lincoln, in the State of Oregon:

"Section 1. From and after the first day of January, 1954, the county seat of the County of Lincoln, in the State of Oregon, shall be, and it hereby is, located and established at the City of Newport, in said county.

"Section 2. On the first day of January, 1954, or as soon thereafter as possible, the County Court of Lincoln County, Oregon, in accordance with the provisions of this act, shall cause all county files, records, and offices of the said county to be removed to suitable quarters in said City of Newport.

"Section 3. All laws fixing Toledo as the County Seat of said county and all laws in conflict herewith are hereby repealed."

Plaintiff in his brief states his position as follows:

"The attack made by Appellant's amended complaint upon the procedure followed in connection with the election and his contentions on this appeal are three-fold: (1) Chapter 254 ORS does not contain a *complete* procedure authorizing the enactment of legislation through the initiative *by counties*; (2) The required number of signatures were not obtained upon the petition seeking to initiate the county seat moving measure; (3) The required formalities of a special election were not carried out in the procedure otherwise followed in holding the election."

Plaintiff's first proposition presents the principal issue on this appeal. It is far-reaching because, if sustained, every county in Oregon will be affected, as it directly challenges the authority of a county to initiate any measure involving local legislation. The second and third propositions are more or less subsidiary to the first.

On June 2, 1902, Art IV, § 1 of the Constitution of Oregon was amended by vote of the people of Oregon to read as follows:

"The legislative authority of the state shall be vested in a legislative assembly, consisting of a senate and house of representatives, *but the people reserve to themselves power to propose laws and amendments to the constitution and to enact or re-*

*ject the same at the polls,* independent of the legislative assembly, and also reserve power at their own option to approve or reject at the polls any act of the legislative assembly. *The first power reserved by the people is the initiative, and not more than eight per cent of the legal voters shall be required to propose any measure by such petition, and every such petition shall include the full text of the measure so proposed.* Initiative petitions shall be filed with the secretary of state not less than four months before the election at which they are to be voted upon. *The second power is the referendum, and it may be ordered* (except as to laws necessary for the immediate preservation of the public peace, health, or safety), *either by the petition signed by five per cent of the legal voters, or by the legislative assembly, as other bills are enacted.* Referendum petitions shall be filed with the secretary of state not more than ninety days after the final adjournment of the session of the legislative assembly which passed the bill on which referendum is demanded. The veto power of the governor shall not extend to measures referred to the people. All elections on measures referred to the people of the state shall be had at the biennial regular general elections, except when the legislative assembly shall order a special election. Any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise. The style of all bills shall be: 'Be it enacted by the people of the state of Oregon.' This section shall not be construed to deprive any member of the legislative assembly of the right to introduce any measure. *The whole number of votes cast for justice of the supreme court at the regular election last preceding the filing of any petition for the initiative or for the referendum shall be the basis on which the number of legal voters necessary to sign such petition shall be counted.* Petitions and orders for the initiative and for the referendum shall be filed with the secretary of state, and in

submitting the same to the people he, and all other officers, shall be guided by the general laws and the act submitting this amendment, until legislation shall be especially provided therefor." (Italics ours.)

On June 4, 1906, also by a vote of the people, Art IV of the Constitution was further amended by addition thereto of § 1a, the material portion of which reads:

"* * * *The initiative and referendum powers reserved to the people by this constitution,* are hereby *further reserved* to the legal voters of every *municipality and district,* as to all local, special and municipal legislation, of every character, in or for their respective municipalties and districts. The manner of exercising said powers shall be prescribed by general laws, *except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation.* Not more than ten per cent of the legal voters may be required to order the referendum nor more than fifteen per cent to propose any measure, by the initiative, *in any city or town.*" (Italics ours.)

■■ We have uniformly held that a county is a municipality or district, within the meaning of § 1a of Art IV. *State v. Mack,* 134 Or 67, 69, 292 P 306; *Briggs v. Stevens,* 119 Or 138, 248 P 169; *Schubel v. Olcott,* 60 Or 503, 120 P 375. Two classes of municipalities are, in fact, embraced within this provision: (1) cities and towns, or pure municipalities; and (2) all institutions which, though not cities and towns, are nevertheless municipalities within the purview of the constitution. *State ex rel. v. Port of Astoria,* 79 Or 1, 12, 154 P 399.

In *Barber v. Johnson,* 86 Or 390, 397, 167 P 800, 167 P 1183, we said:

"* * * A county seat is ordinarily fixed by act of the legislature. The lawful act of the people

of a county changing their county seat is local legislation within the purview of Section 1a of Article IV of our Constitution."

As to all municipalities, other than cities and towns, § 1a of Art IV provides that "the manner of exercising said powers [initiative and referendum] shall be prescribed by general laws". Cities and towns are given power to provide their own procedure for an exercise of these powers, limited only by the restriction that not more than ten per cent of the legal voters may be required to order the referendum nor more than fifteen per cent to propose any measure by the initiative. However, until cities and towns adopt their own procedure, they are governed by the applicable general laws of the state.

In 1903 the legislature adopted an act to provide for the manner of exercising the initiative and referendum powers reserved to the people under Art IV, § 1, of the constitution. General Laws of Oregon, 1903, p 244.

In 1907, the legislative assembly adopted an act "to provide for carrying into effect the initiative and referendum powers reserved by the people in section 1 and section 1a of Article IV of the Constitution of the State of Oregon on general, local, special, and municipal legislation;" etc. The Act of 1903 was repealed. Ch 226, Oregon Laws 1907.

The Act of 1907 was a complete act, except that it contained no specific procedure for the exercise of the initiative and referendum powers by the people of municipalities or districts, other than cities and towns. It prescribed in detail the manner in which the powers reserved by the people should be exercised in the state at large. Sections 10, 11, and 12 of the Act of 1907 provided the procedure to be followed in the exercise of these powers by the people of cities and towns. It

is highly significant that in the procedure so provided, nothing whatever was said about the number of legal voters required on a petition to initiate or refer a measure in a city. In fact, nowhere in the entire act is found a provision respecting that matter, nor has there ever been such a provision in the statutes governing the manner in which these powers may be exercised. As we shall later point out, such a provision is unnecessary because the constitution itself provides for the number of signatures required, not only in the state at large and in municipalities and districts (other than cities and towns), but also in cities and towns.

In 1919 the legislative assembly adopted an act "granting to the people of counties the initiative and referendum powers reserved to the people by *sections* 1 and 1a of article IV of the constitution, and providing for use and application of such powers." (Italics ours.) Ch 251, Oregon Laws 1919. That statute, comprising one section, provides:

"Section 1. The people of every county are hereby authorized to enact, amend or repeal all local laws for their county by initiative and referendum process. The method of procedure in the use by the people of any county of these powers is provided by sections 3470 to 3485 of Lord's Oregon laws, and amendments thereof, making effective the initiative and referendum powers reserved to the people by *sections* 1 and 1-a of article IV of the constitution." (Italics ours.)

It is evident that no powers were granted to the people by this statute—the constitution had already reserved such powers to them—but the act did provide for the manner of exercising them. Sections 3470 to 3485, Lord's Oregon Laws, referred to in the statute, was the Act of 1907, as amended.

It will be observed that in the title as well as in the body of the Act of 1919, both sections 1 and 1a of Art IV of the constitution are mentioned. It is apparent from this that the legislature deemed it necessary to consider both sections together.

The Act of 1907, as amended, became ch 21, title 81, OCLA (ORS ch 254, title 23). Sections 81-2101 to 81-2104, OCLA, incl. (ORS 254.010 to 254.040) set forth the form of petitions, the requirements as to the signatures (not the number thereof) and the manner of verifying them, with whom they shall be filed and the duties of the ministerial officers with respect thereof; § 81-2105 (ORS 254.050) provides for the enforcement of the right by mandamus in the event of refusal of the ministerial officer to function; § 81-2106 (ORS 254.070) provides for the ballot title of the measure and printing on the ballot, and § 81-2107 (ORS 254.090) provides that it shall be placed upon the ballot *"at the ensuing general election"*; § 81-2108 (ORS 254.110) provides for the number of votes necessary to adopt such a measure; § 81-2109 (ORS 255.410) provides for mailing to each voter a copy of the measure prior to election; § 81-2110 (ORS 254.120) provides that the vote shall be canvassed and returned *"by the regular boards of judges, clerks and officers,* as votes for candidates are counted, canvassed and returned." Section 81-2117, OCLA, is the same as the Act of 1919. Ch 251, Oregon Laws 1919, supra. Section 81-2118, OCLA (ORS 254.340), adopted in 1927 (ch 425, Oregon Laws 1927), provides:

"Any municipality or district in exercising the powers of the initiative and referendum granted by sections 1 and 1-a, article 4 of the constitution of Oregon, shall follow the procedure set forth in sections 81-2101 to 81-2116, 81-2119, and 81-2120, in-

clusive, excepting as otherwise provided in section 81-2111, excepting that when *a county* or any municipality or district situated solely within one county is exercising such powers, the county clerk shall be substituted for the secretary of state, the district attorney for the attorney general, the county judge or board of county commissioners for the governor, and appeals by those who may be dissatisfied with the ballot title shall be taken to the circuit court of such county. That for the purposes of this act the terms 'municipality' or 'district' shall be deemed to include ports and all other political subdivisions of the state." (Italics ours.)

■ From the foregoing brief review of the statutes it is clear that ample provision is made for the manner in which the initiative and referendum powers may be exercised, not only in the state at large, but also in cities and towns, and in municipalities or districts, other than cities and towns, including counties. *Hill et al. v Hartzell,* 121 Or 4, 8, 252 P 552; *Briggs v. Stevens,* supra; *Barber v. Johnson,* supra.

However, plaintiff contends that the procedure provided for counties and other municipalities or districts (other than cities and towns) is incomplete because no provision is made (1) for the number of signatures required upon an initiative or referendum petition, nor (2) for the calling of a special election to vote upon such a measure, including the designation of judges and clerks of such an election, and notice thereof.

It is conceded by plaintiff that the number of signatures required upon measures affecting the state at large is governed by the provisions of § 1 of Art IV of the constitution. We have held that section to be self-executing. *State v. Langworthy,* 55 Or 303, 308, 104 P 424, 106 P 336.

■ On the other hand, it is manifest that § 1a of Art

IV is not self-executing. By its precise terms, general laws prescribing the *manner* in which the powers reserved are to be exercised are required. *State ex rel. v. Portland Ry. L. & P. Co.*, 56 Or 32, 37, 107 P 958. But it is clear that the requirement for the adoption of general laws relates exclusively to the *procedure* or *manner* by which the .powers are to be exercised, and has no reference whatever to the *substance* of the power itself.

■ What then is the substance of the powers reserved to the people of the county or other municipality? To answer this question, we must consider both §§ 1 and 1a of Art IV. It is true, as plaintiff contends, that neither section is ambiguous and, therefore, not subject to the rules of construction usually applied to enactments containing ambiguous language, but that does not mean that the two sections should not be construed together. In fact, that is necessary, because § 1a is to a large extent, dependent upon the wording of § 1 for its own meaning. In *Loe v. Britting,* 132 Or 572, 577, 287 P 74, Mr. Justice RAND, speaking for the court, said:

> "Section 1 and section 1a of article IV of the constitution, although adopted separately, were adopted for the purpose of reserving to the people the initiative and referendum powers, the one as to state legislation, the other as to local and municipal legislation, and both are to be looked to in determining the meaning and intent as well as the effect to be given to their provisions."

■■ The substance of the initiative power expressly reserved by the people of the state at large is contained in one complete sentence of § 1 of Art IV; that is, "The first power reserved by the people is the initiative, and not more than eight per cent of the legal voters shall

be required to propose any measure by such petition, and every such petition shall include the full text of the measure so proposed.'' It is clear that the eight per cent provision is not a mere matter of form; *it is a matter of substance, a vital ingredient of the power reserved.* Although by the last sentence of § 1, legislation prescribing the *manner* of exercising the powers is contemplated, nevertheless, it is plain that the legislature would have no power to increase the eight per cent limitation by requiring a greater percentage of the legal voters than that to initiate any measure. That also is true respecting this further provision of § 1: ''The whole number of votes cast for justice of the supreme court at the regular election last preceding the filing of any petition for the initiative or for the referendum shall be the basis on which the number of legal voters necessary to sign such petition shall be counted.'' Both provisions are mandatory in character and not subject to change by the legislature. They are incidents of the initiative power itself and have nothing whatever to do with the *manner* of procedure, although certain parts of the procedure provided are dependent upon them. It is self-evident, therefore, that that is why the legislative assembly never attempted to fix the percentage of signatures necessary upon either an initiative or referendum petition. It recognized the self-executing and binding nature of the constitutional restrictions.

Now let us turn to that portion of § 1a of Art IV which is material to this discussion. First, it is there provided: ''The initiative and referendum powers reserved to the people *by this constitution,* are hereby *further reserved* to the legal voters of every municipality and district, as to all local, special and municipal legislation, of every character, in or for their respective

municipalities and districts." (Italics ours.) Plainly, the words "by this constitution" can refer only to § 1 of Art IV. It, therefore, becomes necessary to look to § 1 in order to determine just what powers are being *further reserved* to the legal voters of the municipality and district. One of the powers so being *further reserved* is the initiative power as defined in § 1. As we have before observed, an important and inseparable element of that initiative power is the provision that not more than eight per cent of the legal voters (determined by the number of votes cast for justice of the Supreme Court) may be required to propose any measure by initiative petition. Hence, under that express provision of § 1a of Art IV, eight per cent only of the legal voters were required to propose a measure by initiative petition, in any municipality or district of the state. That is the power further reserved. This provision standing alone applies to all municipalities and districts, including cities and towns. However, it is provided that the *manner* of exercising said powers shall be prescribed by general laws, except that cities and towns are expressly given the power to provide their own procedure as to their municipal legislation. Moreover, it is expressly provided that in *cities and towns* not more than ten per cent of the legal voters may be required to örder the referendum nor more than fifteen per cent to propose any measure, by the initiative. Such provision relates exclusively to cities and towns and can have no application whatever to other municipalities or districts, such as counties. The very fact that the ten per cent and fifteen per cent provisions related only to cities and towns leads to the inevitable conclusion that counties and other similiar municipalities and districts were intended to be governed by the eight per cent (initiative measure) and five per cent

(referendum) provisions of § 1. Under the constitutional provision, the legislature would lack the power to increase the percentages of the number of signatures necessary to initiate a measure in a county, or to refer a measure, although it does have, and has exercised, the power to provide by general laws for the manner of exercising the initiative and referendum powers by the people of the several counties of the state and of other municipalities and districts. *Hill et al. v. Hartzell,* supra; *Briggs v. Stevens,* supra. We hold that the procedure provided is ample and complete.

The initiative petitions involved in this litigation were circulated in Lincoln county and, as certified by the county clerk, were signed by 1,942 legal voters of said county. Plaintiff attacks the validity of approximately 169 of those signatures, leaving, according to his contentions, only 1,773 that are valid. That is immaterial because, even conceding the invalidity of the 169 signatures, the petitions contained far more than the required number in order to have the proposal submitted to a vote. The total vote cast in Lincoln county for justice of the Supreme Court at the general election held on November 7, 1950, was 4,843. Eight per cent of that number of voters is 387. Therefore, a total of only 387 valid signatures was necessary for the submission of the initiative measure in question.

■■ We are not impressed by plaintiff's contention respecting the election at which the measure in question was submitted to a vote. He argues that, being a special election which was not called by some law or some lawfully appointed body, it was void. It is true that the county court of Lincoln county did not specially call an election for the purpose of having this measure voted upon; but that was unnecessary, and the statutes

governing the submission of such measures in and by counties contain no such requirement. As we have seen, the statute specifically provides that such measures shall be submitted to a vote "at the ensuing general election". The statute itself calls the election. It also provides for the judges, clerks, and other officers for the purposes of the election. No action is required by any official of the county as a preliminary to the holding of such special election, other than that required of the county clerk and of the district attorney. The district attorney prepares the ballot title; the clerk files the petitions, mails to each registered voter a copy of the proposed measure, and causes the proposal to be printed upon the official ballot used at the election. In this case both the district attorney and the county clerk performed the duties imposed upon them by the statute, strictly at the times and in the manner as required by the provisions thereof. Following the election, the county court proceeded according to the requirements of the law. All the proceedings by which the measure was referred to a vote, including the actual voting upon the proposal, were in every way regular and valid. No special notice of the election was given, nor did the statute require such. The mailing of the copy of the measure to each voter constituted the only special notice which was given. That was sufficient. In *Barber v. Johnson,* supra, at page 397, we said:

> "The final contention of plaintiff is that these proceedings are void for the reason that the notice of election failed to notify the electors that this question would be submitted to them for their determination. Our attention is directed to a number of authorities holding elections void for want of notice to the electors, but they were all cases wherein the statute required the notice which was omitted.

Sections 3470-3485, L.O.L., make no provision for posting or publishing a notice of the initiative measures to be voted on at a general election. Section 3478 provides that the Secretary of State shall incorporate in a pamphlet the text of all such measures with arguments for and against their adoption, if such arguments are tendered, and it is provided that this pamphlet shall be mailed to every voter. *The legislature evidently regards this notice as sufficient.* If we were to read into the statute a requirement for further notice which the legislature has not put there, we would legislate judicially.'' (Italics ours.)

Also see *Hill et al. v. Hartzell,* supra.

We conclude therefore, that the initiative measure providing for the removal of the county seat of Lincoln county from Toledo to Newport was properly submitted to the legal voters of that county at the general election held on November 4, 1952, for their approval or rejection, and that all proceedings in connection with the vote upon such measure were in every way legal and valid.

The decree is affirmed.