Argued March 10, affirmed April 13, 1955

# ANDERSON *v.* FINZEL

282 P. 2d 358

*Francis F. Yunker* argued the cause for appellant.

*Howard K. Beebe,* of Portland, argued the cause for respondent.

Before Tooze, A.C.J., and Rossman, Latourette and Perry, Justices.

TOOZE, A.C.J.

This is a damage action for personal injuries alleged to have been caused by the negligent operation of a motor vehicle, brought by Frederick B. Anderson, as plaintiff, against Walter Max Finzel, as defendant. Judgment of involuntary nonsuit was entered against plaintiff, and he appeals.

The accident involving plaintiff occurred on January 1, 1952, about 5 p.m., at the intersection of S. E. Powell boulevard and S. E. 52nd avenue in the city of Portland, Oregon. Traffic at that intersection is controlled by electric traffic lights.

Plaintiff was a deputy sheriff of Multnomah county, having the rank of sergeant, and worked out of the sheriff's office in the county courthouse at S. W. Salmon street and S. W. 4th avenue in Portland. He commanded the shift of deputy sheriffs that went on duty daily at 4 p.m.

On January 1, immediately after he went on duty, plaintiff was notified that a possibly fatal accident had occurred at S. E. 122nd avenue and S. E. Powell

boulevard, a distance of approximately nine miles from the courthouse. The radio dispatcher had given notice of the accident not only to the sheriff's office, but also to a deputy sheriff stationed in a district near the scene of the accident, and to the ambulance company.

Plaintiff is skilled in first-aid treatment, although his duties were strictly those of a deputy sheriff. Upon receiving notice of the accident, plaintiff and deputy sheriff Miller (also a sergeant) left at once in separate cars for the accident scene, plaintiff being followed by Miller. They proceeded from the courthouse south to the Ross Island bridge, which crosses the Willamette river, and then easterly out S. E. Powell boulevard.

At the time plaintiff's motor vehicle was equipped with electric red lights on the front, which were burning, and he also was operating his siren. The same is true as to sergeant Miller, who was following plaintiff at a distance of 75 to 100 feet.

As plaintiff immediately approached the intersection at S.E. 52nd avenue, the traffic light was red to all traffic proceeding easterly and westerly along S. E. Powell boulevard and green (or the go sign) to all traffic proceeding northerly and southerly on S. E. 52nd avenue. Several cars proceeding easterly on S. E. Powell boulevard (in both the inner and outer lanes of traffic—the street being a four-lane highway) had stopped for the light. Without stopping or decreasing speed, plaintiff operated his motor vehicle to the left of the stopped cars and into the west-bound lane of traffic, and continued on easterly into the intersection where a collision occurred between his vehicle and the motor vehicle of defendant. Defendant was proceeding southerly, with the traffic light in his favor. Plaintiff testified that he looked before entering the intersection, but did not see defendant's car until im-

mediately before the impact between the two vehicles. As a result of the accident, plaintiff suffered severe personal injuries.

The order of involuntary nonsuit was granted by the trial court upon the ground that plaintiff was guilty of contributory negligence as a matter of law by proceeding into the intersection against the red traffic signal without first stopping and without reducing the speed of his vehicle.

It is plaintiff's contention that firemen and police officers are vested with official discretion which may not be deemed to be abused by violating statutes and ordinances regulating traffic upon the public highway; that motor vehicles of the police department while being used for emergency purposes and displaying the required lights and sounding a siren or other audible warning are exempted from the rules of the road.

█ It is manifest that in operating his motor vehicle into the intersection against the red traffic light, plaintiff was guilty of negligence per se (such conduct being expressly prohibited by law), unless because of his status as a police officer he had the authority under the circumstances to disregard the established rules of the road. He maintains that he was operating an emergency vehicle upon such an emergency as excused him for noncompliance with the statutory rules.

Section 115-301 (d), OCLA, as amended by ch 279, Oregon Laws 1947 (ORS 483.002 (1)), provides:

> "(d) 'Authorized emergency vehicle.' Vehicles of the fire department, fire patrol, police vehicles, emergency vehicles of municipal departments or public service corporations and ambulances while being used for emergency purposes and displaying the required lights and sounding a siren or other audible warning."

Section 115-302, OCLA (ORS 483.990), provides:

"(a) It shall be unlawful and unless otherwise declared herein with respect to particular offenses it shall constitute a misdemeanor for any person to fail or neglect to comply with any rule or regulation declared in this act."

Section 115-304, OCLA (ORS 483.032), in part reads as follows:

"The provisions of this act applicable to the drivers of vehicles upon the highways shall apply to the drivers of all vehicles owned or operated by the United States, this state *or any county,* city, town, district or any other political subdivision of the state, *subject to such specific exceptions as are set forth in the motor vehicle laws of this state with reference to authorized emergency vehicles.*" (Italics ours.)

■ Under the express provisions of this section of the motor vehicle code, the drivers of all vehicles owned or operated by the county of Multnomah are rendered amenable to the rules of the road, with certain *specific* exceptions set forth in the code itself and applicable to the drivers of authorized emergency vehicles. This, in effect, amounts to an express prohibition against recognition of any exceptions other than those to be found in the motor vehicle code.

Section 115-311, OCLA (ORS 483.128) provides:

"*It shall be unlawful for the driver of any vehicle* or for the motorman of any street car *to disobey* the instructions of *any official traffic sign or signal* placed in accordance with the provisions of this act, unless otherwise directed by a police officer." (Italics ours.)

Section 115.312, OCLA, as amended by ch 344, Oregon Laws 1951 (ORS 483.130), in part provides:

"(1) Whenever traffic is controlled by traffic control signals exhibiting the words 'Go', 'Caution'

or 'Stop' or exhibiting different colored lights successively one at a time, or with arrows, said light, arrows and terms shall indicate and apply to drivers of vehicles and pedestrians as follows:

"(a) Green alone or 'Go'. Vehicular traffic facing the signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn but vehicular traffic shall yield the right of way to pedestrians and other vehicles lawfully within a crosswalk or the intersection at the time such signal is exhibited. Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk.

"* * * * *

"(c) Red alone or 'Stop'. Vehicular traffic facing the signal shall stop before entering the nearest crosswalk at an intersection or at such other point as may be designated by the proper traffic authority, and remain standing until green or 'Go' is shown alone, or may when red or 'Stop' is shown alone, after stopping, turn to the right or left, as set forth in subsection (2). No pedestrian facing such signal shall enter the roadway."

█ The speed limits and designated speeds of motor vehicles as set forth in the motor vehicle code do not apply to emergency vehicles when operated in emergencies under conditions specified in the law. This is a specific exception to the prohibitions of § 115-304, OCLA (ORS 483.032), supra. It relates only to speed, and has nothing whatever to do with required stops. Section 115-325, OCLA, as amended by ch 458, Oregon Laws 1941 (ORS 483.120), provides:

"The speed designated in or pursuant to the provisions of this act shall not apply to authorized emergency vehicles when operated in emergencies and the drivers thereof sound audible signal by bell, siren or exhaust whistle. This provision shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for

the safety of all persons using the street, nor shall it protect the driver of any such vehicle from the consequence of a reckless disregard of the safety of others.''

In only two other sections of the motor vehicle code do we find any mention of emergency vehicles. Section 115-338, OCLA, as amended by ch 301, Oregon Laws 1949 (ORS 483.208), provides:

''* * * * *

''(b) The driver of a vehicle upon a highway shall yield the right of way to authorized emergency vehicles when the latter are operated in emergencies and the drivers thereof sound audible signal by bell, siren, compression or exhaust whistle. This provision shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor shall it protect the driver of any such vehicle from the consequence of an arbitrary exercise of such right of way.''

Section 115-339, OCLA (ORS 483.208) in part provides:

''Upon the approach of any authorized emergency vehicle giving audible signal by bell, siren or exhaust whistle, the driver of every other vehicle shall immediately drive the same to a position as near as possible and parallel to the right-hand edge or curb of the highway, clear of any intersection or highways, and shall stop and remain in such position unless otherwise directed by a police officer until the authorized emergency vehicle shall have passed, * * *.''

These two sections of the code, although giving the right of way to emergency vehicles, do not specifically exempt such vehicles from obedience to traffic control signals, so as to bring them within the terms of § 115-304, OCLA (ORS 483.032), supra. The only specific exception set forth in the code is that relating to speed.

Plaintiff in his brief states his position as follows:

"There can be no serious contention that a police officer while operating an authorized emergency vehicle and displaying the required lights and sounding a siren or other audible warning, may violate statutes and ordinances regulating traffic upon the public highways."

His contention is that the driver of an emergency vehicle while answering an emergency call may violate any traffic regulation, whether it be one as to speed, stopping at a traffic-controlled intersection, or right of way, and whether or not he is expressly authorized by statute so to do. Nevertheless, this contention is in direct opposition to the precise provisions of § 115-304, OCLA (ORS 483.032) supra.

In support of his contention plaintiff cites the cases of *Dodson v. Lemon*, 197 Or 444, 446, 253 P2d 900, and *Buck v. Ice Delivery Co.*, 146 Or 132, 138, 29 P2d 523, quoting from the Dodson case the following:

"The general rule is:

" 'Firemen and police officers are vested with official discretion which may not be deemed to be abused by violating statutes and ordinances regulating traffic upon the public highways. This is not because of any statutory enactment exempting peace officers and firemen from such rules of the road, but upon the ground of sound public policy.

" 'In a word, the statutes, which plaintiff invokes, were unnecessary as to firemen and peace officers, in the discharge of their duties as such. As to them no different status was created by such statutes than the status which was theirs before the enactment of such law.' Buck v. Ice Delivery Co., 146 Or 132, 138, 29 P2d 523."

What was before the court in the Dodson case, and what was there decided, was that the defendant, a police officer, having failed to sound his siren, did not come

within the provisions of the motor vehicle code dealing with authorized emergency vehicles. The rule quoted from the Buck case had no direct bearing upon the issues decided in the Dodson case.

In the Buck case the only issue decided was that an ambulance was required to stop before entering a "stop street". What was said in the above quoted portion of that decision about firemen and policemen was dictum and wholly unnecessary to the decision.

We are not called upon in this case to decide whether a police officer pursuing a felon, or a fireman answering a fire call, is required to stop at an intersection where traffic is controlled by traffic signals. We will decide that question when it is presented to us in a case where a decision thereon is necessary.

When the legislature enacted § 115-304, OCLA (ORS 483.032), supra, it established the public policy of this state. That is primarily a legislative function. If further specific exceptions relating to emergency vehicles are to be written into the law, the legislature must do it; it is not the function of the court to legislate.

Under the facts of this case it is manifest that plaintiff violated the law when he failed to observe the red signal and stop before entering the intersection. He was guilty of contributory negligence as a matter of law. The learned trial judge did not err in entering judgment of involuntary nonsuit. *Virginia Transit Co. v. Tidd,* 194 Va 418, 73 SE2d 405.

The judgment is affirmed.