Argued September 9, 1969, reversed and remanded February 11, petition for rehearing denied April 14, 1970

STATE ex rel ALLEN, *Appellant, v.*
MARTIN et al, *Respondents,*
McGREGOR et al, *Intervenor-Respondents.*

465 P. 2d 228

*William V. Deatherage,* Medford, argued the cause for appellant. On the briefs were Frohnmayer, Lowry & Deatherage and Charles H. Seagraves.

*W. W. Balderree,* Grants Pass, argued the cause for respondents. On the brief were Balderree & Calvert and Philip L. Nelson.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN,\* DENECKE and HOLMAN, Justices.

McALLISTER, J.

This is a mandamus proceeding brought in the circuit court for Josephine County to compel the city council of Grants Pass to dissolve an offstreet motor vehicle parking district. The trial court first granted an alternative writ, but, after a trial, dismissed the writ and denied the petition. The relator appeals.

---

\* Goodwin, J., resigned December 19, 1969.

On April 20, 1966, the city council passed an ordinance completing the establishment in the commercial center of Grants Pass of Off-Street Motor Vehicle Parking Improvement District No. 1. The ordinance prescribing the general procedures for the formation of such districts provides that if more than half the property owners to be assessed object in writing, the proposed improvement was to be abandoned for at least one year. A majority did not object within the time allowed, and the legality of the district as established is not challenged.

There was opposition, however, to the formation of the district and in June 1966 initiative petitions were filed calling for the repeal of the ordinance which levied the assessments to finance the district. The city refused to call an election because it considered the proposed initiative invalid and no further action based on those petitions was taken.

Thereafter the faction opposed to the creation of the parking district initiated an amendment to the charter of Grants Pass and on November 25, 1966, the charter amendment was adopted by the voters of the city. The charter amendment provided that all parking districts created in the future must be approved by a majority of the owners of the land within the proposed district. The amendment further provided in Section 2 thereof that all districts previously formed must be dissolved within 60 days unless within said period the district was approved by petition of a majority of the owners of the land within the district.[1]

---

[1] Section 2, Charter Amendment:

"All such facilities or districts formed or established before the date of this amendment shall be terminated, dis-

No challenge has been made to the manner in which the charter amendment was adopted nor to its prospective operation on the creation of parking districts in the future. The parties disagree only about the application of Section 2 of the amendment to the pre-existing Parking District No. 1.

On January 18, 1967, the city council declared that Parking District No. 1 had been approved by the petition of a majority of the property owners as required by Section 2 of the charter amendment. This declaration was challenged by relator, who contended that a majority of the property owners had not approved the continuation of Parking District No. 1 and demanded that the council dissolve the district. The council refused and relator then commenced this proceeding to compel the dissolution of the district.

■ The trial court was of the opinion that less than a majority of the property owners had petitioned for continuation of the district, but made no finding on that issue because it based its decision on another ground. Relator recites in her brief the evidence supporting her contention that a majority of the owners did not petition for a continuation of the district. The city has ignored this issue both in its brief and on oral argument and has made no effort to justify its declaration that a majority of owners favored the continuation of the district. We accept this as a concession that its declaration was erroneous and will consider that issue as settled adversely to the city.

The city attempts to justify its refusal to dissolve

solved and liquidated by the city council within sixty days from the passage of this amendment unless within such period such district or facility is approved under the procedures set forth above in section 1."

the parking district on two other grounds. The city first contends that Section 2 of the charter amendment is not a legal exercise of the initiative process and is ineffective in spite of its approval by the voters. This contention is based on the well-established rule that the initiative and referendum process applies only to "municipal legislation" and not to ordinances or other city actions, regardless of form, which are administrative or executive in character rather than legislative.

In effect, the city argues that the ordinance of April 20, 1966, which established Parking District No. 1, was an administrative action authorized by statute[2] and a prior legislative ordinance,[3] and as an administrative ordinance was not subject to the referendum. The city then argues that Section 2 of the charter amendment was an attempt to do indirectly by the initiative what could not have been done directly by the referendum. This argument is based on the premise that, in practical effect, the sole purpose of Section 2 of the charter amendment was to repeal the ordinance of April 20, 1966.

The initiative and referendum process was reserved to the voters of municipalities by Section 1a of Article IV of our state constitution adopted in 1906. In 1909 this court held in *Long v. City of Portland*, 53 Or 92, 101, 98 P 149, 98 P 1111, that: "The only

---

[2] ORS 223.805 to 223.845.

[3] Ordinance No. 3370 of City of Grants Pass, August 4, 1965, entitled "An Ordinance Prescribing the Methods and Procedures for Establishment of Off-Street Motor Vehicle Parking Facilities, and Prescribing the Methods and Procedures for Levying and Collecting Special Assessments Therefore, and for the Creation and Enforcement of Assessment Liens; Establishing Separate Bond Lien Docket, Establishing a Special Off-Street Parking Facility Fund."

acts of the council that are subject to the referendum, by Section 1a, Article IV, are such as come within the term 'municipal legislation.' " This rule has been uniformly followed in later cases, all of which are cited and relied on by defendant. *Monahan v. Funk,* 137 Or 580, 584-586, 3 P2d 778 (1931); *Whitbeck v. Funk,* 140 Or 70, 74, 12 P2d 1019 (1932); *Tillamook Peoples' Utility District v. Coates,* 174 Or 476, 483, 149 P2d 558 (1944).

The test for distinguishing between municipal legislation and administrative or executive action has been expressed in various terms. In *Long v. City of Portland,* supra, 53 Or at 101, this court said that: "Legislation as here contemplated must be considered in the sense of general laws, namely, rules of civil conduct prescribed by the lawmaking power and of general application." The court also said that actions of a municipal council relating to questions or subjects of a permanent or general character are municipal legislation, while actions "which are temporary and restrictive in their operation and effect" are not municipal legislation.

In *Monahan v. Funk,* supra, 137 Or at 584-585, this court said:

"In determining whether the ordinance in question was legislative or administrative, we notice that the authorities in the books are in accord that actions which relate to subjects of a permanent or general character are considered to be legislative, while those which are temporary in operation and effect are not. Acts, which are to be deemed as acts of administration and classed among those governmental powers properly assigned to the executive department, are those which are necessary to be done to carry out legislative policies and purposes already declared, either by

the legislative municipal body, or such as devolved upon it by the organic law of its existence. The form of the act is not determinative; that is, an ordinance may be legislative in character or it may be administrative: 43 C. J. 585, § 952; *Long v. Portland,* 53 Or. 92 (98 P. 149, 1111); *Campbell v. Eugene,* 116 Or. 264 (240 P. 418).

"The crucial test, for determining that which is legislative and that which is administrative, is whether the ordinance was one making a law or one executing a law already in existence: *Campbell v. Eugene,* supra. * * *"

Similar statements are found in *Whitbeck v. Funk* and *Tillamook Peoples' Utility District v. Coates,* both supra.

A clear statement of the test as applied in this and other jurisdictions is found in 37 Am Jur 846, Municipal Corporations § 209, as follows:

"* * * Generally, an ordinance originating or enacting a permanent law or laying down a rule of conduct or course of policy for the guidance of citizens or their officers or agents is purely legislative in character and referable, while an ordinance which simply puts into execution previously declared policies or previously enacted laws is administrative or executive in character and not referable."

See, also, *City of Newport v. Gugel,* Ky, 342 SW2d 517 (1960); 5 McQuillin, Municipal Corporations (1969 rev vol) 211, § 16.55.

■ When tested by the criteria announced in our earlier cases we think Section 2 of the charter amendment amounted to more than an attempt to repeal the administrative ordinance of April 20, 1966. We think the amendment as a whole was municipal legislation. It established a permanent rule of law that

the existence of all parking districts was contingent on the approval of a majority of the property owners in the district. As to future districts, creation depended on prior approval. As to districts previously formed, continued existence depended on the approval of the property owners expressed within 60 days from the passage of the amendment. The nature of the amendment was not altered because there was only one existing district to which Section 2 could apply. The continued existence of that district depended, not on the passage of the amendment, but on whether that district by the express approval of a majority of its property owners chose to conform to the newly adopted legislative policy of majority rule.

■ The city also argues that the initiative and referendum have no application to local improvement districts, because only the local property owners are affected. We think that our characterization of Section 2 of the charter amendment as municipal legislation disposes of this argument. The voters of the city have a legitimate interest in the procedures provided for the creation, continuation, and abolition of such districts. As to these procedures they have a right to legislate. The voters of Grants Pass have exercised that right by providing a method by which the property owners within the existing district could decide whether or not it should continue to exist. As we point out above, we do not view the amendment as simply an indirect attempt to refer the ordinance creating the district to the voters of the city at large.

■ The city next contends that Section 2 of the charter amendment is unconstitutional because it impairs the obligation of contracts contrary to Article I, Section 10, and interferes with vested rights in viola-

tion of Section 1 of the Fourteenth Amendment of the Constitution of the United States.

The trial court found that the charter amendment did not impair the obligation of any contracts, but did hold that vested rights had intervened, which the amendment could not destroy. The reasons assigned by the trial court for its holding are set out in its opinion as follows:

> "* * * The fact that the Charter Amendment is a valid exercise of the power granted to the voters does not mean it can be used to destroy vested rights that accrued under the statutes which authorized the off-street parking facilities in question. * * * The assessments that were paid were used to purchase property and the off-street parking facilities were established. These are rights that were acquired under the statutes mentioned and they cannot be destroyed by the Charter Amendment in question."

The essence of defendants' argument that Section 2 of the charter amendment is unconstitutional is expressed in the following sentence contained in their brief:

> "* * * The property owners and the owners of the commercial establishments within the District had a valuable property right and a vested right in the continuance of the properly established Off-Street Parking District."

According to the city the property owners had vested rights because more than $64,000 of the assessments had been paid in cash, Bancroft bonding applications had been filed for the payment of assessments of more than $177,000, the city had purchased seven parcels of land within the district for offstreet parking facilities, had cleared a house from one of the lots, had

called for bids for the removal of buildings from two other lots, had attempted to sell Bancroft bonds and had received bids at two sales.

The simple question presented is whether the City of Grants Pass has the right to dissolve and liquidate special improvement districts in general and Parking District No. 1 in particular. The answer seems obvious. We have been cited to no authority and we have found none holding that a municipality must maintain a special improvement district either in perpetuity or indefinitely. On the contrary, there is ample authority that the property owners in a special improvement district acquire no rights which they can assert to prevent the dissolution and liquidation of the district. Typical of these cases is *In re Koshkonong Mud Creek Drainage Dist.*, 197 Wis 261, 221 NW 864 (1928), an appeal from a judgment dissolving and disorganizing a drainage district, in which the court said:

"It is further urged that persons joining in the creation of the district, either as voluntary petitioners or otherwise, became clothed with certain property rights in connection with the assessments made, money paid, and work done and benefits resulting to the property involved, and that such property rights cannot thereafter be destroyed by any dissolution proceedings.

"We know of no recognized theory in the law upon which it can be said that, in the exercise of its police power within the field of which it is conceded these are, the state confers upon persons directly or indirectly affected thereby a property right to have a perpetual continuing of such particular police power or any right to object to the withdrawal of such prior particular exercise of that power except upon compensation. To uphold appellants' contention in this regard, however, would be to overlook the plain and wide distinction

repeatedly declared to exist between that which is done under the legislative power of eminent domain and that which is done in the exercise of its police power." 221 NW at 866.

See, also, *State ex rel Becker et al v. Wellston Sewer District,* 332 Mo 547, 58 SW2d 988 (1933); *State v. City of Elizabeth,* 54 NJL 462, 24 A 495 (1892); *Clayton & Lambert Mfg. Co. v. City of Detroit* (E.D. Mich, 1929) 34 F2d 303.

The trial court relied on *Lewis v. City of Portland,* 25 Or 133, 35 P 256 (1893), which, in our view, is not apposite. The *Lewis* case held that where a statute permitted owners of property fronting on navigable waters to build wharves extending into such waters, the state could revoke this permission at any time, but such revocation could not affect any wharves already built under authority of the statute. Such wharves, the court said, were private property, which could not be taken without due process of law and payment of compensation. 25 Or at 167. In this case, on the other hand, the city has not identified any similar property right which creation of the improvement district conferred on the owners of property within the district.

The city relies heavily on *Colby v. City of Medford,* 85 Or 485, 522-524, 167 P 487 (1917), but we think that case is simply not in point. It held that the City of Medford could not change its contract with the property owners regarding the terms and manner of paying the assessments for the improvement. Nothing is said in that case to inhibit a city from liquidating a special improvement district, cancelling the debt, and refunding the amounts already paid on the assessments.

We find the city's second contention also lacking in substance and reverse the judgment of the court below and remand the case for further proceedings not inconsistent with this opinion.