Argued December 9, 1971, affirmed January 19, 1972

YAMHILL COUNTY et al, *Respondents, v.*
DAUENHAUER et al, *Petitioners.*

492 P2d 766

*Edward N. Fadeley,* Eugene, argued the cause and filed a brief for petitioners.

*Donald R. Blensly,* District Attorney, McMinnville, argued the cause for respondents Yamhill County and

Jack Beeler. With him on the brief was Duane R. Ertsgaard, Salem, for respondent Marion County.

Before O'CONNELL, Chief Justice, and MCALLISTER, DENECKE, HOLMAN, HOWELL and BRYSON, Justices.

O'CONNELL, C. J.

This is a declaratory judgment proceeding to determine whether a proposed measure filed in Yamhill County in July, 1970 by defendants is a proper subject for the initiative procedure. Defendants appealed from the trial court's judgment for plaintiffs. The Court of Appeals affirmed, 6 Or App 422, 487 P2d 1167 (1971), and defendants filed this petition for review.

The proposed measure provides that,

"Notwithstanding any contrary previous decision made by a majority vote of the Yamhill County Commissioners, Yamhill County shall in no manner undertake the construction of, or participate in any manner in the construction of, any bridge or bridges, crossing the Willamette River."

Prior to the filing of this measure, the Board of County Commissioners of both Yamhill and Marion counties had agreed to construct a bridge across the Willamette river between the two counties. The question of whether bonds should be issued for the construction of the bridge was submitted to the voters of Yamhill County in November, 1968. A similar submission was made in Marion County. The measure passed in both counties. We regard this not only as the voters' decision to issue bonds but also their decision to build the designated bridge. The bonds were offered for sale and the lowest bid was accepted by each county, subject to the bond attorney's approval. As a result

of defendants' filing of the initiative petition, the bond attorney refused to approve the bonds and the bids were withdrawn.

■■ The voters of a county have only such power as is granted to them by the legislature. Where the legislature grants to the citizens of a county the power to approve or reject certain expenditures, that power is exhausted when the expenditure is once approved, absent express statutory authority to the contrary.[1] The power of the citizens of a county to vote on the issuance of bonds for county purposes is derived from ORS 287.054 - 287.074. Having once exercised the power granted to them by the statute, the voters of Yamhill County have no power to rescind that approval in a later vote. Without such power, the proposed initiative measure is improper insofar as it relates to the construction of the bridge previously agreed upon by the Yamhill Board of County Commissioners.

The measure is, however, cast in language broad enough to proscribe the construction of bridges in Yamhill County in the future. Whether the voters would have the power by initiative to enact such a proposal is a question we need not now decide. The proposed measure would have called upon the electorate in Yamhill County to vote also upon the question of whether the bridge previously approved could be constructed. As we have noted, the voters do not have the power to rescind their previous approval. Since the proposed measure contained matter not properly included, the trial court correctly held that it was not

---

[1] See 68 ALR2d 1045-1047 and cases cited therein. See also Garrett v. Tubac-Amado School District No. 5, 9 Ariz App 331, 451 P2d 909, 912 (1969); Enloe v. Baker, 94 Ariz 295, 383 P2d 748, 762 (1963); Custer City v. Robinson, 79 SD 91, 108 NW2d 211, 213-214 (1961).

proper to submit the measure for a vote under the initiative procedure.

The judgment of the trial court is affirmed.

McALLISTER, J., dissenting.

I concur in that part of the majority opinion which holds that the voters of Yamhill County have no power to rescind their approval of the issuance of bonds for the construction of a bridge across the Willamette River. The bonds, having been approved by the voters, are a legal obligation of the county and, if sold, must be paid according to their terms.

The decision to build a bridge, however, is a separate question from the decision to finance the bridge by the issuance of bonds. As the majority opinion points out, the decision to build the bridge was made by the Board of County Commissioners of Yamhill County. If the Board of County Commissioners could decide to build the bridge, it presumably could revoke that decision. The power of the Board to change its mind about building the bridge is not questioned by the majority.

General law provides that decisions to build bridges and to cooperate with other counties in building bridges are made at the county level. ORS 203.120(4); ORS 382.245. Article IV, sec 1 (5) of the Oregon Constitution reserves the initiative and referendum powers

"* * * to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district."

This court has held that a county is a "municipality or district" within the meaning of a prior identical provision. *Kosydar v. Collins*, 201 Or 271, 277, 270 P2d

132 (1934). It is clear, therefore, that the voters of Yamhill County have power through the initiative to enact legislation providing that Yamhill County shall not construct or participate in the construction of any bridge across the Willamette River. As the Court of Appeals pointed out in its opinion, the measure is legislative rather than administrative when tested by the criteria approved in our prior decisions. See, e.g., *State ex rel Allen v. Martin,* 255 Or 401, 465 P2d 228 (1970); *Monahan v. Funk,* 137 Or 580, 3 P2d 778 (1931).

What effect the initiative measure would have on a bridge previously authorized but not yet constructed need not be decided in this case. It is clear, however, that the question whether Yamhill County should participate in the building of a bridge across the Willamette River is a different question than how the bridge should be financed.