Argued December 16, 1975, affirmed January 27, reconsideration denied February 4, petition for review denied March 9, 1976

AMALGAMATED TRANSIT UNION-DIVISION
757 et al, *Respondents,*

*v.*

YERKOVICH, *Respondent,* and WILSON et al,
*Appellants.*

(No. 417-822, CA 5173)

545 P2d 1401

*Ferris F. Boothe,* Portland, argued the cause for appellants. With him on the briefs were Black, Kendall, Tremaine, Boothe & Higgins, Portland.

*Daniel B. Cooper,* Deputy City Attorney, Portland, argued the cause for respondent Yerkovich. With him on the brief were John W. Osburn, City Attorney, and Thomas R. Williams, Senior Deputy City Attorney, Portland.

*John R. Faust, Jr.,* Portland, argued the cause for other respondents. With him on the brief were Joseph S. Voboril and Matthew W. Chapman, Portland.

Before Langtry, Presiding Judge, and Thornton and Lee, Judges.

LANGTRY, P. J.

## LANGTRY, P. J.

On May 15, 1969 Portland's City Council passed a resolution expressing a preference for a specific "corridor alignment" or route designation for the "Mt. Hood Freeway" proposed to be built by the Oregon State Highway Department through southeast Portland. Following a decision by the United States District Court "invalidating" the planned location of the proposed freeway, the city council passed a second resolution on July 25, 1974 rescinding its "approval" of the highway and requesting that the United States Secretary of Transportation transfer funds previously allocated for its construction to alternative "mass transit projects."

On May 19, 1975 the "Committee to Build the Mt. Hood" (defendants) filed with the auditor for the City of Portland an initiative petition prepared and circulated by it which proposed the enactment of an ordinance "approving the construction of the Mount Hood Freeway/Transitway in southeast Portland with federal and state funds on a route to be selected by the appropriate procedure and agencies in accordance with applicable laws and regulations." Shortly thereafter plaintiffs[1] brought this suit for declaratory judgment and injunctive relief seeking to prevent the certification of the petition as a ballot measure. In essence plaintiffs alleged in their complaint that because the ordinance proposed by defendants would (1) be of no binding force or effect on any person or agency and thus advisory in nature, and (2) constitute an administrative rather than legislative act its enactment would be an abuse of the initiative power which is limited solely to the passage of "legislative" measures. Defendants appeal from an order adjudging any cer-

---

[1] Plaintiffs include both "electors and taxpayers," residing in southeast Portland, allegedly damaged by the "uncertainty" resulting from the filing of defendants' petition, and a labor union, the members of which were alleged to have been "materially adversely affected" by the delay in the "relocation" to mass transit programs of state and federal funds also caused by the submission of the proposed initiative measure.

tification of their petition by the city's auditor to be void, and enjoining any further action calculated to lead to the inclusion of the measure on the ballot.

In its memorandum opinion the circuit court noted that if enacted defendants' proposed ordinance would, in addition to reflecting the "attitude of the electorate," serve only to "request" (1) that the United States Secretary of Transportation continue to approve the Mt. Hood Freeway as part of the interstate highway system, and (2) that both federal and state highway authorities undertake all necessary steps to accomplish the construction of the facility.[2] The circuit court pointed out that the measure would neither command nor direct any city official to perform any specific act or accomplish any precise goal, and concluded that the initiative petition did not, in fact, propose the enactment of a "law":

> "* * * [I]t calls for the expression of the public view or opinion respecting the freeway and, if it received the approval of a majority of the voters, solicits, not compels, consistent action by persons other than officials of the City of Portland. In the first respect the proposed initiative would be nothing more than a public opinion poll. In the latter respect it amounts to nothing more than a resolution or a memorial to the department of transportation * * *."

---

[2] The proposed ordinance specifically required that the City of Portland:

"[Approve] the construction of a Mount Hood Freeway/Transitway through southeast Portland over a route to be selected by the procedure and governmental agencies required by applicable federal, state and local laws and regulations.

"[Request] the United States Secretary of Transportation to continue his approval of the Mount Hood Freeway/Transitway as a segment of Interstate 80 North within the City of Portland to connect with Interstate 205 on the east and the Portland central business district on the west.

"[Request] the Department of Transportation of the United States and the Department of Transportation of the State of Oregon to make the studies, to hold the public hearings, to select and designate a route and to design and to construct a Mount Hood Freeway/Transitway all in accordance with the applicable laws and regulations at the earliest possible practicable date and to utilize the federal and state funds available for these purposes."

The legislative devices of the initiative and referendum were added to the Oregon Constitution in 1902.[3] Each provides a means by which a popular vote may be obtained on a given issue—the initiative for proposing acts and the referendum for attacking those newly adopted by elected officials.

The basic law of the initiative is set out in Article IV of the state constitution which vests the legislative power of the state in a legislative assembly[4] while reserving to the people the power "to propose laws and amendments to the Constitution and enact or reject them at an election independently * * *" of the legislature itself.[5] The initiative power is also specifically reserved to the qualified voters of each municipality, "as to all local, special and municipal legislation of every character in or for their municipality * * *."[6]

■ The authority of the electorate to enact measures by popular vote is not, however, without limitation. The courts of this state have consistently held that these devices may be employed solely to propose or attack measures "legislative" in nature. The courts have noted that the constitutional provisions conferring the initiative and referendum are placed within the article defining and delegating the state's *legislative* powers, and have taken cognizance of the ways in which the conduct of government would be seriously hampered were the initiative and referendum to be used to compel or bar "administrative" acts by elected officials. See, for example, *State ex rel Allen v. Martin,* 255 Or 401, 465 P2d 228 (1970); *Tillamook P. U. D. v.*

---

[3] G. Hedges, *Where the People Rule* (1914).

[4] Oregon Constitution, Art IV, § 1(1).

[5] Oregon Constitution, Art IV, § 1(2)(a).

[6] Oregon Constitution, Art IV, § 1(5). Article 1, Section 2-101 of Charter, City of Portland, Or, vests all "municipal powers" in a council, "subject to the initiative and referendum and other powers reserved to the people by the constitution of the state of Oregon as defined and prescribed by the provisions of the constitution and general laws relating thereto * * *." Defendants do not contend that the initiative power granted under the charter is broader in any way than that conferred by Article IV of the constitution.

*Coates,* 174 Or 476, 149 P2d 558 (1944); *Campbell v. City of Eugene,* 116 Or 264, 240 P 418 (1925); *Long v. City of Portland,* 53 Or 92, 98 P 149, 98 P 1111 (1908); *Yamhill County v. Dauenhauer,* 6 Or App 422, 487 P2d 1167 (1971), *aff'd* 261 Or 154, 492 P2d 766 (1972).

■  Thus, the significant question is whether the petition defendants sought to have submitted to the electors of Portland constituted an appropriate use of the initiative as a proposal of "legislative" action.[7]

The test for distinguishing between legislative and administrative acts has been expressed in various terms over the years by the Supreme Court. In *Long v. City of Portland,* supra, the court described "legislation" as "general laws * * * rules of civil conduct * * * of general application * * *," and concluded that measures relating "to questions or subjects of a permanent or general character * * *" constituted legislation, while those having a "temporary and restrictive" effect did not. 53 Or at 100-01. The court subsequently noted in *Monahan v. Funk,* 137 Or 580, 584-85, 3 P2d 778 (1931), that:

> "In determining whether the ordinance in question [is] legislative or administrative * * * authorities * * * are in accord that actions which relate to subjects of a permanent or general character are considered to be legislative, while those which are temporary in opera-

---

[7] Defendants have also argued here that because the ballot title of their measure had been previously certified by the city auditor and all additional procedural steps required for the submission of an initiative petition to the voters had been taken the circuit court was without authority to pass upon the "validity" of the proposed ordinance in advance of an election. Although the constitutionality of an initiative measure legislative in nature may not, in fact, be considered by either administrative officials or the courts prior to the time it is passed upon by the voters—Johnson v. City of Astoria, 227 Or 585, 363 P2d 571 (1961); Unlimited Progress v. Portland, 213 Or 193, 324 P2d 239 (1958)—it has been well established that an initiative petition may be scrutinized before being placed on a ballot for the purpose of resolving a question of whether the measure lawfully proposes legislative as opposed to administrative action. *Yamhill County v. Dauenhauer,* 261 Or 154, 492 P2d 766 (1972), *aff'g* 6 Or App 422, 487 P2d 1167 (1971); *Tillamook P. U. D. v. Coates,* 174 Or 476, 149 P2d 558 (1944); *Whitbeck v. Funk,* 140 Or 70, 12 P2d 1019 (1932); *Monahan v. Funk,* 137 Or 580, 3 P2d 778 (1931).

tion and effect are not. Acts, which are to be deemed as acts of administration and classed among those governmental powers properly assigned to the executive department, are those which are necessary to be done to carry out legislative policies and purposes already declared, either by the legislative municipal body, or such as devolved upon it by the organic law of its existence. The form of the act is not determinative; that is, an ordinance may be legislative in character or it may be administrative: 43 C. J. 585, § 952; *Long v. Portland,* 53 Or. 92 (98 P. 149, 1111); *Campbell v. Eugene,* 116 Or. 264 (240 P. 418).

*"The crucial test, for determining that which is legislative and that which is administrative, is whether the ordinance was one making a law or one executing a law already in existence: Campbell v. Eugene, supra * * *."* (Emphasis supplied.)

Consistent with its opinion in *Monahan,* the court adopted in *State ex rel Allen v. Martin,* supra, 255 Or at 407, the following as a "clear statement" of the distinction between legislative and administrative acts:

" '* * * Generally, an ordinance originating or enacting a permanent law or laying down a rule of conduct or course of policy for the guidance of citizens or their officers or agents is purely legislative in character * * * while an ordinance which simply puts into execution previously declared policies or previously enacted laws is administrative or executive in character and not referable.' "

The Mt. Hood Freeway was originally proposed as a part of the "interstate system," a federal-aid program established by Title 23 of the U. S. Code. That enactment provides in relevant part that the routes of the interstate system are to be selected by joint action of state highway departments of the states, subject to the approval of the Secretary of Transportation,[8] and that no specific project designed to pass through an urban area of more than 50,000 population will be approved unless the Secretary finds that it is

"* * * based on a continuing comprehensive transportation planning process carried on cooperatively by

[8] 23 USC § 103(e)(3) (1970); 23 USC § 105(a) (1970).

States and local communities * * * [No such urban project] may be constructed * * * unless the responsible public officials of such urban area in which the project is located have been *consulted* and their views *considered* with respect to the corridor, the location and the design of the project." (Emphasis supplied.) 23 USC § 134(a) (1970).

Thus, the selection and approval of segments of the interstate highway system authorized by Title 23 are administrative functions delegated by the Congress to the Secretary of Transportation and the various state highway departments. While it must be consulted before the Secretary will approve any project within its boundaries, the City of Portland has no authority to either compel or bar the construction of any part of the interstate system; its "approval" of a project within that system, accompanied by a "request" that responsible state and federal officials carry out its construction, represents at best a measure of participation in an administrative process. As pointed out by plaintiffs:

"Defendants *concede* that the purported initiative '* * * does not necessarily bind the State of Oregon or the Department of Transportation of the United States'. The purported initiative does not compel anyone to do anything — not the people of Portland, their city officials or the state or federal government. It does not affect legal relationships, appropriate funds, or set forth procedures for future conduct. It is only a public opinion bill, advisory in nature, which sets forth no prescribed rule of civil conduct."

█ The petition submitted by defendants did not constitute a "legislative" act. The law providing for the construction of the interstate system of which the proposed Mt. Hood Freeway would be a part was enacted by Congress; defendants' measure would not, and could not, alter that legislation in any way, but was an attempt to reverse a related administrative decision of the city's elected officials.

The dissenting opinion herein seems to circumvent these facts by denying the existence of some and ignoring others.

Affirmed.

[ 228 ]

**LEE, J.,** dissenting.

I dissent because I believe the majority has denied the voters of Portland their constitutional right of initiative.

The majority's error is discernible from the very passages they quote. Part of the majority's quotation from *Monahan v. Funk,* 137 Or 580, 584, 3 P2d 778 (1931) states that:

> "In determining whether the ordinance in question was legislative or administrative, we notice that the authorities in the books are in accord that actions which relate to *subjects of a permanent or general character are considered to be legislative,* while those which are temporary in operation and effect are not. Acts, which are to be deemed as acts of administration and classed among those governmental powers properly assigned to the executive department, are those which are *necessary* to be done *to carry out legislative policies and purposes already declared,* either by the legislative municipal body, or such as devolved upon it by the organic law of its existence. \* \* \*" (Emphasis supplied.)

The purpose of the initiative measure was manifestly *not* to carry out a policy "already declared"; rather the purpose was the opposite: *to declare a policy.*

The majority also quotes from *Monahan* that:

> "The crucial test, for determining that which is legislative and that which is administrative, is whether the ordinance was one *making* a law *or* one *executing* a law already in existence \* \* \*." (Emphasis supplied.) 137 Or at 585.

What "law already in existence" did the initiative measure undertake to execute? None. Rather, the proposed initiative measure sought to make a *new law* (requiring the city council to support the freeway) and replace an *old law* (rescinding approval of the freeway).

The majority also quotes from the recent case of *State ex rel Allen v. Martin,* 255 Or 401, 407, 465 P2d

[ 229 ]

228 (1970) which upheld an initiative measure against the challenge that it concerned administrative matters concerning dissolution of a parking district. The majority's quotation with proper emphasis is:

" '* * * Generally, an *ordinance* originating or enacting a permanent law or *laying down a* rule of conduct or *course of policy for the guidance* of citizens or their *officers* or agents is *purely legislative* in character * * * while an ordinance which simply puts into execution previously declared policies or previously enacted laws is administrative or executive in character and not referable.' * * *" (Emphasis supplied.)

The proposed initiative measure (*see* Footnote 2 of the majority opinion) has the aim and effect of "laying down a * * * course of policy"—that the freeway should be built.

The whole Mount Hood Freeway controversy is a dispute—not about details of execution, but—about the "policy" question of whether or not to seek federal approval of the freeway. The establishment of public policy is a legislative, not a judicial, function. *State of Oregon v. Blount, Sr.,* 200 Or 35, 46, 264 P2d 419 (1953); *Anderson v. Finzel,* 204 Or 162, 170, 282 P2d 358 (1955); 82 CJS 24, Statutes § 9; 16 Am Jur 2d 380, 382, Constitutional Law § 167; 72 CJS 213-14, Policy.

The majority opinion unjustifiably restricts the people's power of initiative; it is contrary to both the words and spirit of the constitution.

The obvious purpose of the initiative power is to allow the people to legislate directly—their powers, then, should be co-extensive with the legislature. *Rose v. Port of Portland,* 82 Or 541, 552, 162 P 498 (1917); 82 CJS 197, Statutes § 118.

This right of initiative is available on equal terms to the voters in municipalities as to "* * * all * * * municipal legislation, *of every character* * * *." Oregon Constitution, Art IV, § 1(5). (Emphasis supplied.)

The importance of the words "of every character" was noted by our Supreme Court in *Barber v. Johnson,* 86 Or 390, 396, 167 P 800, 167 P 1183 (1917) as follows:

> "The words 'of every character' must mean something and were inserted for a purpose. They forbid a narrow technical construction of the word 'legislation.' "

Our Supreme Court has repeatedly held that the initiative power is to be given a liberal construction, favoring the right of the people to its exercise. In *Othus v. Kozer,* 119 Or 101, 109, 248 P 146 (1926), which involved an initiative petition, the court said:

> "Election laws should be liberally construed: [Citing cases.] The great constitutional privilege of a citizen should not be taken away by a narrow or technical construction of a law regulating the exercise of such right. * * *"

*See also, Kays v. McCall,* 244 Or 361, 373, 418 P2d 511 (1966).

I respectfully dissent.